THE BOARD OF SUPERVISORS OF RICHMOND COUNTY, Respondent, v. PETER S. WANDEL and others, Appellants.

(GENERAL TERM, SECOND DEPARTMENT, 1872.)

A county treasurer is liable to the county for interest received on deposits of county funds.

His liability arises not only from his fiduciary relation, but from the fact that the interest belongs to the county, and comes into his hands as county treasurer.

Accordingly held, that his sureties for the faithful execution of the duties of his office, and for payment, according to law, of all moneys coming into his hands as county treasurer, were liable on their bond for such interest.

Boards of supervisors do not act judicially in passing upon the annual accounts rendered by county treasurers.

Nor have they any power, in passing upon his accounts, or otherwise, to sanction the withholding by him of any moneys belonging to the county or to discharge him from liability therefor.

Nor will their acts or omissions have the effect to discharge his sureties, as such, in respect of such liability.

THIS was an appeal by the defendants from a judgment against them entered upon the report of a referee.

The action was brought by the supervisors of Richmond county against defendant Wandel, the treasurer of that

county, and the other defendants as sureties upon his official bond, given by him upon entering upon the office of county treasurer.

It appeared and was found by the referee that Wandel was duly elected treasurer of Richmond county for a term of three years, from January 1, 1861, and upon entering upon the duties of the office gave an official bond, in which the other defendants united as sureties, as follows, viz.:

" Know all men by these presents that we, Peter S. Wandel, of the town of Southfield; Ephraim Clark, of the town of Southfield; Samuel H. Frost, of the town of Westfield; and Daniel L. Clawson, of the town of Southfield, and county of Richmond, are held and firmly bound unto the supervisors of the county of Richmond in the sum of $50,000, to be paid to the said supervisors, or their successors in office, for which payment, well and truly to be made, we bind ourselves, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals, and dated the 13th day of November, 1860. Whereas, Peter S. Wandel has been duly' elected county treasurer, in and for the county of Richmond: Now, therefore, the condition of this obligation is such that if the said Peter S. Wandel shall faithfully execute the duties of said office, and shall pay, according to law, all moneys which shall come to his hands as county treasurer, and render a just and true account thereof to the board of supervisors, or the comptroller of the State, when thereunto required, then this obligation to be void, otherwise to remain in full force and virtue."

(Signed, etc.)

That the bond was duly filed, and Wandel discharged the duties of the office of treasurer during the term for which he had been elected.

The referee also found that the defendant Wandel had not faithfully executed the duties of the office of county treasurer of Richmond county during his term, but that he had failed and neglected to do so, and that he did not pay according to

law all moneys which came into his hands as treasurer, and did not render a just and true account thereof to the board of supervisors, or to the comptroller of the State, when thereunto required, as specified in his bond, but had committed breaches of the condition thereof by his failure to pay over or enter in his accounts as treasurer, submitted to the board of supervisors, or pay out according to law, certain sums received by him for interest on deposits of county moneys; also by erroneously and by mistake crediting himself with money paid the State superintendent of public instruction which had not been so paid, and also by several other omissions and errors in his accounts, by reason of which he was credited, erroneously, with the payment of certain moneys.

That Wandel had claimed, before the supervisors at their annual meeting at which his accounts were audited, that the interest moneys received by him on deposits, as mentioned, belonged to him as a perquisite of his office, and that the board thereupon audited and allowed his account without insisting upon the credit to the county of the interest moneys from deposits, and that his accounts were also passed upon and allowed upon two subsequent annual accountings by the treasurer of the board, and items of interest received upon deposit of county funds were not credited to the county, or charged against him in his accounts, and that such credit was not insisted on or exacted from him.

That Wandel had been elected as county treasurer of Richmond county for a further term of three years, commencing with the year 1864.

That after the auditing and allowance of his account in November, 1864, at a meeting of the board of supervisors, Wandel represented, in regard to his previous accounts, that he could not comprehend the system of accounts of the comptroller's office, and that he had not paid over to the State treasurer the amounts received for school moneys in payment of county indebtedness; and that, being asked by the chairman, informed the board that the difference would be from four to perhaps six or seven thousand dollars; that

he having retired from the board, and the board having considered the subject of services rendered by him in promoting the enlistment of men to fill the quota of Richmond county, and in raising funds to meet expenses of the draft, which were stated to have been arduous, a motion was made that whatever difference existed in Wandel's accounts with the county, in respect to school moneys, should be allowed to him for his services in relation to the draft. This motion was unanimously assented to, but no resolution was entered in any book of record of the board, or signed by the chairman or clerk, or reduced to writing.

The referee further found that the defendants were liable on the bond above set forth, and for breach of the conditions thereof, notwithstanding the allowance of interest to Wandel by the supervisors as a perquisite, and notwith-standing the allowance to him for services in promoting enlistments. That neither the auditing nor allowance of the county treasurer's accounts by the supervisors, nor their omission to charge him with the interest and other moneys appearing to be due from him, discharged him or his sureties from liability for such amounts on his bond ; and that the resolution of the supervisors at their meeting in November, 1864, was inoperative and ineffectual for such purpose for the reason, among others, that it was not in writing, and that the board of supervisors were without authority to make any profits or gratuity of the public money received or collected by the treasurer, or to allow counterclaims against the county in his behalf, except for county charges ; or to make allowance for any such charges by him against the county, except upon claims presented and verified by him as required by law. And he found in favor of the plaintiff's right to recover on the bond in respect of the sums allowed the plaintiff by the supervisors, as before mentioned, with interest.

*S. F. Rawson* for the appellant, cited 2 Caine's Cases, 1 10 Johns., 180 ; 16 id., 100 ; Hill on Trus., p. 41 ; 6 B. & C. 739 ; 9 D. & R.; 723 ; *Rex* v. *Sheriff of Surrey* (1 Taunt., 126,

and cases cited in note J., p. 207); *Burg.* on Surety, 116; *People* v. *Jansen* (7 Johns., 332); 1 R. S., 848; id., 860, § 68; *Chemung Bank* v. *The Supervisors, etc.* (5 Denio, 526); *Supervisors of Onondaga* v. *Briggs* (2 id., 29); *Supervisors* v. *Birdsall* (4 Wend., 460); *Ex parte Wilson* (11 Vesey, 420); *Lewis* v. *Jones* (4 B. & C., 506).

*Tompkins Westervelt*, for the respondents, cited *Supervisors of Livingston* v. *White* (30 Barb., 72); *Looney* v. *Hughes* (26 N. Y., 514); *Jefferson County* v. *Jones* (19 Missouri, 51); *Commonwealth* v. *Brice* (22 Penn., 211); *Bowen* v. *Washington Co.* (25 id., 69); 1 R. S., 369, § 20; 1 id., 370, chap. 189, Laws of 1846, § 1; 1 R. S., 369, § 4; chap. 180, Laws of 1845, amended by chap. 490, § 2, Laws of 1847; *Chemung Bank* v. *Supervisors of Chemung Co.* (5 Denio, 520); *Supervisors of Chemung* v. *Birdsall* (4 Wend., 361); 1 R. S., 367, § 4, sub. 1; id., 364, § 4; id., 337, § 9; *Meeker* v. *Van Rensselaer* (15 Wend., 398); *Hallock* v. *Woolsey* (23 id., 328); *Owneys* v. *Speed* (5 Wheat., 524); *Miner* v. *McLean* (4 McLean, 140); *Taylor* v. *Henry* (2 Pick., 397); *Hutchinson* v. *Stall* (11 Verm., 421); *Smith* v. *Helmer* (7 Barb., 416); *Moor* v. *Newfield* (4 Greenl., 44); *Britton* v. *Lawrence* (1 Chip., 103); *Angel* v. *Pownal* (3 id., 461); *Cabot* v. *Britt* (36 Vt., 353); *Committ* v. *Reaqua* (18 Me., 344); *Blaisdell* v. *Briggs* (23 id., 123); *People* v. *Gardinier* (9 Johns., 71).

Present—BARNARD, P. J., GILBERT and TAPPEN, JJ.

By the Court—GILBERT, J. We are of opinion that the judgment appealed from is in all respects correct.

It is not disputed that Wandel is liable in the sum found by the referee. But it is claimed that the defendants, who are his sureties, are not liable for the item of interest received by Wandel on moneys belonging to the county. It is difficult to discover any reasonable ground upon which to exempt them from liability. The liability of Wandel on the bond, for these moneys, arises from the fact that they belonged to

the county, and came to his hands as county treasurer.

This point has already been decided by this court, and admits of no question. The notion that a public officer may keep back interest which he has received upon a deposit of public moneys, as a perquisite of office, is an affront to law and morals, for if done with evil intent, it is nothing less than embezzlement. Having been received by Wandel as county treasurer, the item of interest is within the terms of the bond. The liability of the defendants, originally, for the other money embraced in the judgment, is not contested. But it is claimed that they have been discharged therefrom by the acts of the board of supervisors. We think otherwise. The allowance made to Wandel of the moneys in controversy was without authority of law, and, therefore, void. Boards of supervisors may audit and allow demands against the county. In performing this duty they act judicially. But they do not so act in passing upon the annual accounts rendered by the treasurer, nor have they any power, in passing upon the treasurer's accounts or otherwise, to sanction the withholding by him of any moneys belonging to the county, or to discharge him from liability therefor. The referee has discussed this subject at length, and we quite agree with the views expressed by him.* Nor did the acts

---

* The following is an extract from the opinion of Hamilton W. Robinson, Esq., the referee before whom the case was tried:

"As to any accounts against the county, duly presented to the board of supervisors, they act judicially, and their determination or adjudication upon them is final. But as to the accounts of the county treasurer rendered to them, their functions are to 'audit and allow' them. (1 R. S., 369, § 4.) Their action as to any matters of charge against the county, presented to them, on such settlement, in the manner required by law, in discharge of any claims of the county, and which arise from any discharge, diminution or recoupment against any such claim of the county, I regard as equally within the scope of the judgment which the supervisors are authorized to render upon the claims and accounts of the treasurer, submitted to their examination for 'audit and allowance.' Were this present claim merely for interest on funds belonging to the county alleged to have been unreasonably and illegally retained by him, the judgment of the supervisors seems to me conclusive, because the matter presented for their consideration engrosses

or omissions of the supervisors, on which the defendants rely,
have the effect to discharge them as the trustees of Wandel,

the entire consideration of the subject-matter, and their 'audit and allowance' of the account disposes of all the items of discharge which might be presented in abatement or disallowance of the account thus presented.

"Interest is but an incident to the principal debt and the disallowance by the supervisors, upon settlement of the treasurer's account, of a charge against him of interest upon the sums of money in his hands as treasurer, improperly retained by him, is within the rule as above stated. But as to moneys shown to have been actually received by the treasurer for interest on any such moneys, a different rule prevails. Being omitted in his accounts, as rendered and settled by the board of supervisors, they exist as affirmative claims in favor of the county for moneys never embraced in any previous account rendered by their agent or trustee, and presented for the consideration of the board.

" By the then existing provisions of the Revised Statutes, the boards of supervisors of the several counties of this State were authorized at their annual meeting (1 R. S., 367, § 4, sub. 2), ' to examine, settle, and allow all accounts chargeable against such county, and to direct the raising of such sums as may be necessary to defray the same.' By 2 R. S., 369, section 20, it is made the duty of the county treasurer ' to receive all moneys belonging to the county, from whatever source they may be derived, and all moneys belonging to the State which by law are directed to be paid to him, and pay and apply such moneys in the manner required by law.' By section 21, ' the county treasurer shall keep a just and true account of the receipts and expenditures of all moneys which shall come into his hands, by virtue of his office, in a book or books to be kept for that purpose.' By section 23, ' at the annual meeting of the board of supervisors, or at such other time as they shall direct, the county treasurer shall exhibit all his books and accounts, and all his vouchers relating to the same, to be audited and allowed.'

" By chapter 180, of the Laws of 1845, section 24 (as amended by chap. 490, § 2, of the Laws of 1847), it was enacted that ' no account shall be audited by any board of town auditors or supervisors, or superintendents of the poor, for any services or disbursements, unless such account shall be made out in items, and accompanied with an affidavit attached to and filed with such account, made by a person presenting or claiming the same, that the items of such account are correct, and that the disbursements and services charged therein have been in fact made or rendered, or necessary to be made or rendered, at that session of the board, and stating that no part thereof has been paid or satisfied.'

" By the Revised Statutes (p. 370, § 26), the county treasurer is entitled to retain a commission of one per cent on every dollar which he shall receive and pay, to wit, one-half of such commission for receiving, the other half

for the reason that the trustees of one public officer will not
be allowed to plead in their own discharge the neglect or

for paying; and by chapter 189, section one, of the Laws of 1846, it was provided that such compensation should in no case exceed the sum of $500
per annum. From these provisions, it will be perceived, the duty of the
board of supervisors is confined to auditing and allowing the account of
the county treasurer for the money received and disbursed by him as such
officer; that they authorize no allowance to him in the settlement of his
account of any private claims against the county, unless they are presented
in the mode prescribed for the presentation of claims against the county
by other persons; that to confer jurisdiction for the allowance of adverse
claims against the county, the account must be made out in items, and
verified by affidavits of the persons presenting the claim; and the statute
above referred to prohibits the auditing of any claim against the county
not so presented and verified.

"The liability of the defendant Wandel for the several sums of interest
money allowed to him by the New York Life Insurance and Trust Company, upon the deposits made by him in his name as treasurer of the
county, is established, unless the action of the subsequent board of supervisors, in settling his account as treasurer, with full knowledge that he had
collected these moneys and failed to charge him therewith, is conclusive
upon the question of those interest moneys. In each year (1861, 1862 and
1863) the board had evidence before them that he had received the interest
moneys, with which he is now sought to be charged, from the New York
Life Insurance and Trust Company, and abandoned the claim to them by
failing to assert the right of the county to them on the annual average settlements of the treasurer's account. In *Supervisors of Chenango* v. *Bird-
sall* (4 Wend., 461), the Supreme Court held that 'if supervisors, in the
adjustments of accounts, which it is their province to audit and settle,
abandon a just claim (for interest claimed from the treasurer on sums he
had illegally withheld) respecting which there is a dispute, they cannot,
on a future occasion, when it may suit their convenience, set it up again.'
But, nevertheless, the right of the supervisors to recover commissions illegally charged in the account then settled as 'an allowance beyond compensation authorized by law,' notwithstanding such settlement, is
there asserted by the court. That case involved the right to add to
the charges against the treasurer, for interest on money he had unreasonably, and perhaps illegally, withheld, and the claim being of a mere
incident to the principal debt, and the principal being paid or accounted
for, the waiver of any claim for interest was held to be within the discretion of the board of supervisors; but in the present case, the treasurer having, as I find, actually received these moneys (several sums) from the New
York Life Insurance and Trust Company, for interest upon the funds of th
county, and the claim to retain it being merely as a perquisite of office

illegal acts of other public officers. (*Looney* v. *Hughes*, 26 N. Y., 522.)

The judgment must be affirmed, with costs.

---

the board of supervisors, in my opinion, had no jurisdiction to allow it on that ground, or to release or discharge him therefrom. In an ordinary settlement of accounts between individuals, they are at liberty to make any contracts they choose in respect to it; in the accommodation of mutual claims they may relinquish, each to the other, any pretensions or claims, and, in making a settlement, may each agree that a certain fixed sum shall be the true balance of their respective claims. The account thus stated raises an implied promise upon the part of the person found indebted to pay the balance settled between them.

"But, as between public officers, upon one of whom the duty is conferred 'to audit and allow' the accounts or claims of the other, no such right exists of entering into a 'mutual accounting,' or making any such contract with each other, either express or implied, in respect to the matters involved, as gives to an account stated or a *simul computassent* its legal efficacy. The authority conferred upon the board to audit and allow 'the accounts of the treasurer is to be strictly construed. It confers no power to allow any but legal county charges.' (*Chemung County Bank* v. *Supervisors Chemung*, 5 Denio, 20.) It does not authorize the discharge or condonation of any amounts found legally due from the accounting party, nor the exercise of any discretion in respect to the matters submitted. (*Morris* v. *The People*, 3 Denio, 382.) The board of supervisors, upon any such audit of the treasurer's account, cannot allow any claim upon any notions of their own as to its equity (*People* v. *Lawrence*, 6 Hill, 244), nor as a 'perquisite of office,' nor any but such as are expressly sanctioned by statute. I am of the opinion that the failure of the board to bring into the account of the treasurer, for the years 1861, 1862 and 1863, the items of money actually received by him for interest on the public funds does not prevent their recovery, although the receipt by him of these moneys was brought to their notice, and they neglected to charge him with them.

"In the case of the *Supervisors of Chenango* v. *Birdsall* (4 Wend., 453), the question as to a charge for interest on money the treasurer illegally withheld, was submitted to the supervisors, and they took into consideration his liability for such interest.

The right of the county to maintain any such claim was disputed, and was waived. This interest was not money received by the treasurer, but existed in a claim against him as an incident to the principal debt, and the principal being accepted, the claim for interest thereby fell with it; and Justice MARCY regards this inchoate and disputed claim, to recover from the treasurer, interest on money illegally withheld by him, as within the jurisdiction and judgment of the board on auditing the account, and that, as it was abandoned after full knowledge of all the facts, it could not be sued

for and recovered in a subsequent action. In the present case, the treasurer received these moneys from the county funds. The statute is peremptory that he shall receive and account for 'all moneys belonging to the county, from whatever source they may be derived,' and 'pay and apply such moneys in the manner required by law.' (1 R. S., 369, § 20.) The board of supervisors, in respect to money so received by him, had no discretion or authority to allow them as 'perquisites of office,' or to make a gift or gratuity of them to him, nor to condone, discharge or absolve him, without proper consideration, from liability for them, and their attempt to do so (in 1861), by ignoring or disregarding the rights of the county in respect to the sum he had received for such interest, was without any authority conferred upon them by statute, and constituted no relinquishment or release of the claims for them by a subsequent board; and although the county treasurer, at his several subsequent annual accountings, in 1862 and 1863, exhibited to the board his bank book, showing the receipt by him of interest on the moneys of the county in those years, they failed to take any notice of them, or to require that he should be charged with them. Such non-action on their part, even with full knowledge that he claimed them as a perquisite of office, for a stronger reason was of no effect as a surrender or release of the rights of the county.

" His duty was made, by the statute, imperative, and he rendered himself and his sureties liable for these moneys thus received, and which he has failed to pay or apply according to law, notwithstanding that the board for those years, in auditing and allowing his account, may have knowingly and designedly omitted them as a charge against him.

" For these reasons, I am of the opinion that the defendants are liable for these several sums collected or received by him for interest money on county fund, in 1861, 1862 and 1863. Third, as to the sums received by Mr. Wandel, as county treasurer, from the school funds, amounting for the years 1861, 1862 and 1863 (beyond any credits or deductions properly allowed to him), and as above stated, for 1861, $2,059.38; for 1862, $2,046.59; and for 1863, $2,951.96, beyond what he has accounted for, the errors are fully established, and he has never paid or applied any portion of them in the manner required by law.

" No defence is offered against a recovery of them, except an alleged accounting, in which it is claimed they were merged and satisfied. It appears from the evidence that, at the annual meeting of the board in 1864, and after his accounts for that year had been audited and allowed, Mr. Wandel stated to the board that in relation to the school moneys 'he was befogged;' that he could not understand the system of accounts kept at the comptroller's office; that he had never actually received any money from the State, having passed over the checks he received for moneys immediately, in payment of the county indebtedness; the chairman asked him what the difference would amount, to and he replied from $4,000 to perhaps $6,000 or $7,000. He retired, and the board conferred together; they discussed and took into consideration the services he had

Supervisors of Richmond County *v.* Wandel.

performed in enlisting men and procuring substitutes to fill the quota required from the county toward filling the draft and in raising funds to meet the expenses of the draft, which were stated to have been arduous, and Mr. Keeley, one of the members, moved (substantially) 'that whatever difference existed in Wandel's accounts with the county, in respect to these school moneys, should be allowed to him for services in relation to the draft.' This proposition was put to vote, and passed unanimously.

" This resolution, however, was never signed by the chairman or the clerk of the board, nor recorded in any book of record of the county, nor was it ever reduced to writing, or manifested otherwise than by the verbal resolution above stated.

"Another resolution, highly commendatory of him and his services in behalf of the county in effecting the enlistment of men to fill the quota of the county, was then also passed and recorded in the county ledger.

" From the accounts of the treasurer, presented in evidence, it further appears that Wandel, in 1863, received credit for commissions (on war loan of $20,000) $200, and for fees for obtaining loans and issuing bonds, stamps and disbursements, $1,000; and in his accounts, audited and allowed in 1864, he charged and received credit for commissions for raising and disbursing money in enlisting volunteers to fill the quota of the county, with which duty he had been entrusted ($1,874 and $4,041.50), $5,915.50; for a commission of $5 per man on 1,000 men enlisted ($2,285 and $2,715), the sum of $5,000; for completing and delivering bonds ($200 and $350), $550, making a total of allowances for these very services of $11,465.50; and had also been allowed credit in his account, as superintendent of enlistments, for raising moneys, to wit: two and one-half per cent on $95,000, $2,375, five per cent on $62,000 = $3,100, and ten per cent on $189,000 = $18,900, together amounting to $24,375. None of those charges and allowances are questioned, but this attempt to make him an additional allowance, gift or gratuity of upward of $10,000 has been repudiated by a subsequent board, which ordered the bringing of this suit, and I am of the opinion that the resolution and action of the board in 1864 to effect that object was void, because—

" 1st No such claim for services was ever presented by Mr. Wandel, in the form or verified manner required by the twenty-fourth section of chapter 180 of the Laws of 1845, as amended by section 2 of chapter 490, of the Laws of 1847, above quoted. It is uncertain from the resolution whether the amount of the deficiencies in the treasurer's account for school moneys (amounting, in fact, to $10,120.99, exclusive of interest) should be specifically allowed for his entire compensation for his services 'in relation to the draft,' as expressed in the verbal resolution, or should be in addition to the $11,465.50 already allowed him therefor, exclusive of $24,375 credited him for commissions on the bonds issued for loans. The act of 1864 (chap. 8), authorizing the payment of expenses incurred and services rendered in procuring enlistments, does not exempt him from the operation of the act of 1845. This provision of law regulated and con-

The People *v.* Daniell.

trolled proceedings of this character, and was intended to prevent any such vague and indefinite action ; the presentation of the account so verified was necessary to confer jurisdiction to act upon the subject. Without presentation in writing of the claim verified, the action of the board was entirely without authority.

"2d. That the action of the board in passing this resolution had no reference to the auditing and allowance of any account then before them, and was void, because, First : It was of a judicial character and should have been in writing. (*Meeker* v. *Van Rensselaer*, 15 Wend., 398; *Smith* v. *Helmer*, 7 Barb., 417 ; 1 Rev. Stat., 367, § 9, Subs. 1, 2 ; *Taylor* v. *Henry*, 2 Pick., 397 ; *Britton* v. *Lawrence*, 1 Chipman, 103.) Second : It was founded upon a misstatement made by Mr. Wandel of the amount of school money unaccounted for, and without any correct knowledge or information as to the facts of the case being afforded them by Mr. Wandel, or ascertained by them from any other source, as to the true balance of school moneys for which he had failed to account, then amounting, as before stated, to $10,120.99. Third : Whatever was the intention of this board in making the allowance, by way of offset of the services of Mr. Wandel, in the enlistment service of the county, against those school moneys, the legal effect of the resolution was to tender or offer to him the amount of his deficiency as 'compensation' and full satisfaction therefor. He never accepted this proposition, but exacted and retained the full sums for commissions and services, as before stated, of $11,465.50, or, including the commissions credited him, of $35,840. It is for these reasons that I hold that the defendants are liable for the full amount of these school moneys, with interest to be computed on the principal sums from the several dates when they were erroneously allowed or should have been entered in the treasurer's account."