THE SUPERVISORS OF KEWAUNEE COUNTY vs. KNIPFER and others.

OFFICER: SALARY. (1) *County treasurer not entitled to extra allowance. County board can not allow it.* (2) *Nor impose duties on him not required by law.* (3) *Such allowance illegally made and paid or retained, recoverable from him and sureties.*

1. The duty of selling and assigning tax certificates belonging to a county, being imposed by law on the county treasurer, is compensated by his *salary;* and, after the time within which the statute requires his salary to be fixed, the county board of supervisors have no authority to make any extra allowance to him for the performance of that duty. Ch. 75, Laws of 1867 (Tay. Stats., 304, §§ 62–64).

2. It seems that if the county board attempt to impose a duty upon the treasurer without legal authority to do so, he may refuse to perform it; but if he performs it, he can receive no compensation for it beyond his legal salary.

3. At the expiration of the second term of office of a county treasurer, the county board undertook to allow him $2,000 above his regular salary, for selling and assigning tax certificates of the county during his two terms, and permitted him to settle his accounts on that basis; and, on his paying over the amount of county moneys in his hands, less said $2,000, his successor receipted to him for the amount paid as in full of all moneys in his hands belonging to the county. *Held,* that the sureties on his official bond were not discharged from their liability in respect to the $2,000 so allowed, the action of the board in making such allowance being absolutely *void.*

APPEAL from the Circuit Court for *Kewaunee* County.

The facts in the case were stipulated by the parties, and are substantially as follows: The defendant *Knipfer* was elected to

the office of county treasurer of Kewaunee county at the general election in 1868, and again at the general election in 1870, and held such office for two terms, or from January, 1869, to January, 1873. The other defendants are the sureties in his official bond for the last of said terms. In January, 1873, *Knipfer* was succeeded in such office by one Syke, who had been duly elected thereto at the preceding general election.

Prior to the first election of *Knipfer*, the annual salary of the county treasurer had been determined by the board of supervisors of that county at $1,000, and it remained unchanged during the time *Knipfer* held the office. During all that time he received such salary, which was the same as was paid to his immediate predecessor.

When *Knipfer* entered upon his first term, the county board of supervisors, by resolution, directed that the tax certificates belonging to the county be sold by the county treasurer; and during both terms he performed that duty. Prior to that time the same duty had been performed by the clerk of such board.

On the 31st day of December, 1872, *Knipfer* presented to the board his final account of receipts and disbursements, which was referred to a committee of the board. The committee reported that they had examined the account and found the same correct and true in each and every item and charge therein, and recommended that the same be adopted. The account contained a charge against the county for " extra services rendered the county, $2,000," which *Knipfer* explained to the committee, and probably to the board, " was made up of a charge of $500 per year for the four years he had held the office of county treasurer, for services in selling and assigning tax certificates for said county." On the same day the account was presented, the board, on motion, adopted the report of the committee. *Knipfer* had settled his accounts as treasurer with the board annually, while he held the office, but no claim for such extra services was made by him except as above stated.

After allowing $2,000 for such extra services, the account

showed a balance in the hands of *Knipfer*, belonging to the county, of $1,825.89, which sum he duly paid over to his successor in office, January 6, 1873, and it was received by the latter " as a full payment of all moneys remaining in the hands of *Knipfer*, belonging to said county."

The board of supervisors, at a meeting thereof held February 3, 1873, repudiated such allowance for extra services, on the ground that it had no power to make the same, and caused notice to be given to *Knipfer* to pay over the $2,000 to his successor. *Knipfer* thereupon appeared before the board, and refused to comply with such notice. The board then directed the district attorney to bring this action to recover the amount of such allowance. Before the action was commenced, the county treasurer made demand upon *Knipfer* to pay into the county treasury the $2,000, but the latter has failed to do so.

Upon the foregoing facts the circuit judge found, as conclusions of law : 1. That the county of Kewaunee was not liable to *Knipfer* for the said sum of $2,000, nor any part thereof, claimed by him for extra services. 2. That the board of supervisors of that county had no authority or jurisdiction to act upon or allow said claim, and their action therein of December 31, 1872, so far as it may be construed into an attempt to allow the same, was null and void and not binding on the county. 3. That neither the action of the board upon the claim, nor of Syke in receiving from said *Knipfer* the sum of $1,825.89, amounted to an allowance of the claim, nor a voluntary payment thereof by the county to *Knipfer*. 5. That the plaintiff is entitled to judgment against the defendants for $2,000 and interest thereon from January 6, 1873, with costs of suit. Judgment was ordered, and duly entered accordingly ; from which the defendants appealed.

. *Neville, Tracy & Neville*, for appellant, argued that the allowance by the board was an adjudication, and reviewable only by *certiorari*. *People v. Bristol & R. Turnpike Co.*, 23 Wend., 226 ; *People v. Collins*, 19 id., 56. The case is one of money

voluntarily paid under claim of right, there being a mistake of law, and none of fact. *Clarke v. Dutcher*, 9 Cow., 674; *Sup'rs of Onondaga v. Briggs*, 2 Dev., 26; *Snelson v. The State*, 16 Ind., 29; *Mowatt v. Wright*, 1 Wend., 356. The action can not be sustained because the treasurer had accounted as required. His account had been allowed. He paid over all that was demanded. The case turns wholly on the mistake of law. The rule obtains that money voluntarily paid to a municipal corporation for illegal tax, license or fine, can not be recovered back. *Robinson v. City Council*, 2 Rich. (S. C.), 317; *Smith v. Hutchinson*, 8 id., 260; *Ellston v. Chicago*, 40 Ills., 514; *Richmond v. Judah*, 5 Leigh., 305; *Mays v. Cincinnati*, 1 Ohio St., 274; *Marietta v. Slocum*, 6 id., 471; *Cahaba v. Burnett*, 34 Ala., 400; *American B'k v. Mumford*, 4 R. I., 478; *Christy v. St. Louis*, 20 Mo., 143; *Walker v. St. Louis*, 15 id., 563; *Smith v. Readfield*, 27 Me., 145; *Allentown v. Sæger*, 20 Pa. St., 421; *Baltimore v. Lefferman*, 4 Gill. (Md.), 425; *Morris v. Baltimore*, 5 id., 244; *Taylor v. Bd. of Health*, 31 Pa. St., 73. There should not be one rule for the county and another for the individual. The sureties were discharged by the act of the board. The default of the principal was committed with the connivance of the creditor. *Dawson v. Laws*, 23 L. J. C., 434; 1 Chitty on Cont., 11 Am. ed., 773; *Mitchell v. Milwaukee*, 18 Wis., 93. The office of treasurer is biennial, and the obligation of the surety ends with the term. Fell's Law of Guaranties and Sureties, 136; *B'k of Steubenville v. Leavitt*, 5 Ohio, 207; *B'k of Steubenville v. Hoge*, 6 id., 17; *McGovney v. The State*, 20 id., 93; *Norris v. Crummey*, 2 Rand., 323.

*Hastings & Green*, for respondents:

1. It was part of *Knipfer's* duty to sell and assign the tax certificate for the county. 1 Tay. Stats., 430, § 147. 2. His salary covers his entire services as treasurer. *Palmer v. City of New York*, 2 Sandf., 318; *Phœnix v. Supervisors*, 1 Hill, 363. Even though part of the duties are imposed after he enter upon his term. Dillon Mun. Corp., §§ 172, 173; *People*

*v. Edmonds*, 19 Barb., 468; *Wendell v. Brooklyn*, 29 id., 204; *U. S. v. Smith*, 1 Boud., 71.   3. The $2,000 is not a legal charge. The board are prohibited by the constitution and statute from paying it. Const. Wis., Art. IV, sec. 26; 1 Tay. Stats., 304, §§ 62, 63.   4. The position taken by some of the New York courts, that the board in passing upon the validity of claims, act in a judicial capacity, can not be maintained in this state. Const. Wis., Art. II, sec. 7; Cooley's Const. Lim. *Att'y Gen. v. McDonald*, 3 Wis., 805; *Gough v. Dorsey*, 27 id. 119.   The county board do not act in a judicial capacity, but only as special agents of the county, and when they exceed their authority their action is simply void. *Clark v. City of Des Moines*, 19 Iowa, 199; *Welch v. Ste. Genevieve*, 1 Dillon C. C., 130; *Reppy v. Jefferson County*, 47 Mo., 66; *Washington v. Parker*, 5 Gilman, 233; *Van Kirk v. Clark*, 16 S. & R., 289, 290; *Irwin v. Commissioners*, 1 id., 505; *Lyon v. Adams*, 4 id., 443; Dillon Mun. Corp., § 412, note.   And see *Sup'rs Jefferson County v. Jones*, 19 Wis., 51; *Sexton v. Sup'rs Richland County*, 27 id., 350; *Hubbard v. Lyndon*, 28 id., 677.   Their act in allowing this claim is void. *Hodges v. Buffalo*, 2 Den., 110; *Boone v. Utica*, 2 Barb., 104; *Chemung Bank v. Supervisors*, 5 Den., 517; *Halstead v. Mayor, etc.*, 3 Com., 430; *People v. Lawrence*, 6 Hill, 244; *President and Trustees v. Mappin*, 14 Ill., 194; *People v. Haws*, 21 How. Pr., 117; *State v. Hastings*, 10 Wis., 525.   5. Money belonging to the public and paid illegally may be recovered back.   *U. S. v. Ferreira*, 13 How., U. S., 52, note; *Frost v. Inhabitants Belmont*, 6 Allen, 152; *Trumbull v. Campbell*, 3 Gil., 502.   6. The liability of sureties is coextensive with that of the principal. *Supervisors v. Jones*, 19 Wis., 51; *Supervisors v. Wandel*, 6 Lans., 33; *Looney v. Hughes*, 26 N. Y., 514; *Farmington v. Stanley*, 6 Me., 472.

LYON, J.   For the purposes of the case it will be assumed that, by adopting the report of the committee appointed to examine the final account of *Mr. Knipfer* as county treasurer,

the board of supervisors allowed him $2,000 over and above his regular salary, for selling and assigning tax certificates belonging to the county during his two terms of service as such officer.

The duty of selling and assigning such certificates is imposed by law upon the county treasurer. Laws of 1861, ch. 138, sec. 1 (Tay. Stats., 430, § 145). The same being an official duty of that officer, his salary necessarily includes compensation therefor. Hence, when the board of supervisors made an allowance of $2,000 to *Mr. Knipfer* for such services, it assumed to increase the salary of the county treasurer during his term of office. This the board had no authority to do. Laws of 1867, ch. 75 (Tay. Stats., 304, §§ 62–4). It seems to us too clear for argument that the action of the board, being *ultra vires*, is not binding upon the county or the board of supervisors, which represents the county, and that no valid claim to the sum thus allowed can be predicated of such action.

But were it true that the selling and assigning of tax certificates belonging to the county is an extra official-duty — one not imposed by law upon the county treasurer, — we should still be of the opinion that no extra compensation can lawfully be allowed therefor. If the board attempts to impose duties upon the treasurer without legal authority to do so, that officer may refuse to perform them. But if he performs them, we think his official salary is the only compensation he can lawfully receive therefor. For example, the last legislature charged the justices of this court with the important duty of appointing suitable persons to revise the statutes of the state, and with other duties, some of them quite onerous, pertaining to such revision. Those duties are entirely foreign to our judicial functions, and probably we might lawfully have declined to perform them; but, having performed them, we cannot think for a moment that we have any right to receive, or the legislature to give, compensation therefor beyond our fixed salaries

as justices of this court. Const., Art. IV, § 26. We think this example is in point, for the constitutional provision and the statute last cited are identical in terms.

An ingenious argument has been submitted by the learned counsel for the defendants, to the effect that the allowance by the board was an adjudication by a tribunal having jurisdiction of the subject matter, and, although it may be erroneous, it is, nevertheless, valid and binding upon the county. The fault in this argument is, that it is based upon false premises. The board had no jurisdiction whatever to make the allowance. Its action is *coram non judice*. This is also an answer to the position that this is a case of the payment of money without fraud, under a mutual mistake of law, in which case it is said no action lies to recover back the money thus paid.

But it is further claimed that, although *Mr. Knipfer* may be liable in this action, the sureties in the treasurer's bond were discharged from liability by the action of the board of supervisors. We do not think so. As already observed, the allowance for extra services was made without legal authority, and in the face of a positive statutory prohibition. The action of the board, being absolutely null and void, did not and could not affect the rights or liabilities of any one, and the liability of the sureties must be determined precisely as though no such action had been taken by the board of supervisors.

The plain *status* of the case then is this: At the expiration of his last term of office as county treasurer, *Mr. Knipfer* had in his hands, as such treasurer, the sum of $3,825.89, belonging to the county. He paid over to his successor in that office $1,825.89, and refused, on due demand, to pay over the remaining $2,000, and still retains the same. That *Mr. Knipfer*, and the sureties in his official bond, are liable to the county for such balance and the interest thereon, as the circuit court adjudged, we cannot doubt.

*By the Court.* — Judgment affirmed.