(66 Misc. Rep. 317.)

CITY OF SYRACUSE v. ROSCOE et al.

(Supreme Court, Special Term, Onondaga County.   February, 1910.)

1. MUNICIPAL CORPORATIONS (§ 173*)—OFFICERS—BONDS—POWER OF COUNCIL
TO SATISFY.

Syracuse City Charter, § 68, provides that the city treasurer, before en-
tering upon his office, shall give a bond which shall be a lien upon all real
estate of the treasurer and his sureties in the county until satisfaction of
the conditions thereof and payment of all costs and charges. *Held* that,
where the city treasurer executed his bond in absence of statute expressly
conferring such power upon it, the common council could not satisfy the
bond without consideration and deprive the city of the security given it by
the statute.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
399; Dec. Dig. § 173.*]

2. MUNICIPAL CORPORATIONS (§ 172*)—POWERS OF COUNCIL—AUDIT OF OFFI-
CERS' ACCOUNTS.

Syracuse City Charter, §§ 131, 132, provides that the mayor and common
council shall exercise the powers of a board of city auditors, and shall
possess the powers and perform the duties of town boards in the county.
Section 22 gives the council power to make ordinances for certain pur-
poses, including the management and regulation of finances, and to reg-
ulate, preserve, and dispose of the real and personal property of the city.
Rev. St. (5th Ed.) pt. 1, c. 12, tit. 4, subc. 2, §§ 46–49, provide generally
that the town board shall constitute a board of auditors to examine the
accounts of overseers of the poor, commissioners of common schools, and
commissioners of highways, as to moneys received and disbursed by them.
Laws 1863, c. 172, directs the town auditors to examine the accounts of
overseers of the poor and commissioners of highways annually, and directs
the commissioners of highways, and all town officers who receive or dis-
burse moneys belonging to their respective towns, to account to the board
of town officers for such moneys. *Held,* that the common council has
power to pass upon the accounts of the city treasurer as to city moneys
received and disbursed by him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
396; Dec. Dig. § 172.*]

3. MUNICIPAL CORPORATIONS (§ 172*)—ACCOUNTING BY OFFICERS—"TO AUDIT"
—"AUDIT."

The meaning of the phrase "to audit," when applied to claims against
towns, cities, or counties, means to hear, to examine an account, and, in
its broader sense, includes its adjustment or allowance, disallowance, or
rejection; and the verb "audit," as so used, means simply to examine, to
adjust, and clearly implies the exercise of judicial discretion.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
396; Dec. Dig. § 172.*

For other definitions, see Words and Phrases, vol. 1, pp. 639–642.]

4. MUNICIPAL CORPORATIONS (§ 1013*)—OFFICERS—AUDITING OF ACCOUNTS—
EFFECT.

Whenever a board of auditors has the power to examine and adjust
accounts against a town or city, and acts within its jurisdiction, its deci-
sion, in the absence of fraud or collusion, is final and cannot be collateral-
ly attacked; but the board being a tribunal of limited jurisdiction, if it
attempts to do more, its action is absolutely void.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
2185; Dec. Dig. § 1013.*]

5. MUNICIPAL CORPORATIONS (§ 172*)—OFFICERS—AUDIT OF ACCOUNT—EFFECT.

Where a city officer presents his accounts to a board having power to
audit them, and fails to charge himself with moneys received, of which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

failure the board has no knowledge, its audit of his account is not binding upon the city in favor of such officer or his sureties as to the amounts not accounted for by him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 398; Dec. Dig. § 172.*]

6. ACCOUNT STATED (§ 5*)—PRESENTATION OF CITY OFFICER'S ACCOUNTS TO AUDITING BOARD.

The presentation by a city officer of his accounts to an auditing board does not create an account stated between the city and the officer, since an account stated arises from an agreement of the parties, and an auditing board is without power to contract for the city.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 16, 29; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 1, pp. 93–98; vol. 8, p. 7561.]

7. PRINCIPAL AND SURETY (§ 121*)—DISCHARGE OF SURETY—NEGLIGENCE OF CREDITOR.

Mere laches of an obligee or creditor, or nonperformance of some act which might prevent loss to a surety, will not, in the absence of express covenant or condition, discharge the surety; and hence where a city officer's accounts are audited by an auditing board which fails to discover a defalcation in his office, and such defalcation is not discovered until after the officer's term has expired and the officer has been discharged in bankruptcy, the city does not lose its remedy against the sureties upon his bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 298–301; Dec. Dig. § 121.*]

8. EVIDENCE (§ 83*)—PRESUMPTIONS—REGULARITY OF OFFICIAL ACTS—ACTION BY CITY.

Where a city sues in its corporate name by its proper law officers, the action will be presumed to have been authorized, until the contrary appears.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83.*]

9. MUNICIPAL CORPORATIONS (§ 173*)—LIABILITY ON BOND OF OFFICER—"DE-FALCATION."

The word "defalcation" does not necessarily imply any fraud or criminal act of the person guilty of it, and has a wider meaning than the words "fraud," "embezzlement," or "misappropriation," and a municipal officer failing to pay over public moneys for which he is properly chargeable is guilty of a defalcation, for which he is liable on his bond.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 399; Dec. Dig. § 173.*

For other definitions, see Words and Phrases, vol. 2, p. 1926.]

10. MUNICIPAL CORPORATIONS (§ 1023*)—RIGHT OF CITY TO SUE—CONSTRUCTION OF CHARTER—DEFENSE.

Syracuse City Charter, § 61, provides that it shall be the duty of the corporation counsel to prosecute and defend all civil actions and proceedings by and against the city, but prohibits him from commencing an action unless directed by the mayor. *Held*, that the provision for direction by the mayor does not affect the right of the city to sue or limit its power by any condition precedent, the fulfillment of which must be pleaded, and, if the corporation counsel fails to regard such restriction on his powers, defendant cannot take advantage of it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2194; Dec. Dig. § 1023.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

**11. MUNICIPAL CORPORATIONS (§ 173\*)—ORDINANCES—CONSTRUCTION—DIRECTION TO SUE ON OFFICIAL BOND—"OFFICE."**

An ordinance directed the corporation counsel to bring an action to collect and recover on the bond of a city official such money paid to him and belonging to the city "as may be shown to have been stolen from or misappropriated in the office of the city treasurer and not duly accounted for." *Held*, that the ordinance did not contemplate that the moneys for which a recovery was sought should be shown to have been actually stolen from the room in which the treasurer held his office, or misappropriated in that particular room, but included moneys of the city stolen or misappropriated by the treasurer or his subordinates in such a'way that the treasurer was liable therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 404; Dec. Dig. § 173.\*

For other definitions, see Words and Phrases, vol. 6, pp. 4921–4931; vol. 8, p. 7736.]

**12. MUNICIPAL CORPORATIONS (§ 173\*)—ACTION ON BOND—INTEREST.**

In an action by a city on an officer's bond to recover for a defalcation, after he has retired from office, the city is entitled to interest on the amount of the defalcation from the date when the officer's successor took office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 409; Dec. Dig. § 173.\*]

Action by the City of Syracuse against Ben W. Roscoe and others. On motion to set aside a verdict for plaintiff and for a new trial. Denied.

Walter W. Magee, Corp. Counsel, for plaintiff.
Costello, Burden, Cooney & Walters, for defendant Roscoe.
Hancock & Hogan, for defendant Estate of John Dunfee.
Fowler, Crouch & Vann, for defendant Estate of Christian Cook.
Daniel V. Murphy, for Estate of John McCarthy.

ANDREWS, J. On March 4, 1889, Ben W. Roscoe was duly appointed city treasurer of the city of Syracuse for the period of three years. Section 68 of the city charter, as then in force, provided that, before entering upon the duties of his office, the city treasurer "shall enter into a bond to the city of Syracuse in such penal sum as may be fixed by the common council, with two or more sureties to be approved by the common council, and conditioned for the faithful discharge of his duties; which bond, when so approved and indorsed by the city clerk, shall be filed in the clerk's office of the county of Onondaga, where it shall be recorded as required in the case of collectors of towns. Said bond shall be a lien on all the real estate of said treasurer and his sureties in the county of Onondaga until the conditions thereof, with all the costs and charges which may accrue upon the prosecution thereof, shall be fully satisfied."

On April 1, 1889, the finance committee of the common council reported that the bond of Mr. Roscoe should be in the sum of $300,000 "to continue during his term of office and until discharge by order of the common council." On the same day the report was adopted, and a resolution was passed "that the official bond to be given by the city treasurer be and the same is hereby fixed at the sum of $300,000." On April 5th a bond in that amount was given by Ben W. Roscoe,

as principal, and Roger S. Sperry, Bruce S. Aldridge, Christian Cook, John Dunfee, and John McCarthy, as sureties, conditioned that the treasurer should "faithfully execute, discharge and perform the duties of his said office and shall faithfully and honestly collect and disburse according to law, all local and general taxes levied and which may hereafter be levied in said city, which it shall be his duty to collect, and shall properly account for and pay over all moneys and property which may be received by him pursuant to the provisions of any law now in force or which may be hereafter enacted." This bond was duly approved and was filed in the clerk's office of Onondaga county.

At the end of the first year of Mr. Roscoe's term of office, he presented to the common council an annual report and requested an examination of the books, accounts, and vouchers of his office. The report was accepted and placed on file; and on February 24, 1890, one Lawrence W. Myers was appointed by the common council to make this examination and to report his results to the council. On May 26, 1890, Mr. Myers so reported, and the report was placed on file. At the next meeting of the council, on June 6, 1890, the minutes of the previous meeting were approved. Similar proceedings were had a year later. Finally, on February 22, 1892, Mr. Roscoe made a report for the third year of his term of office. This report was again accepted and placed on file; and on February 24th Mr. Myers was appointed to examine such books and accounts. He reported on June 13, 1892, and his report was placed on file. On June 20th the following resolution was adopted by the council:

"Resolved, that the official bond of Ben W. Roscoe, as city treasurer and tax receiver, dated April 3, 1889, and filed in the county clerk's office April 5, 1889, in the sum of three hundred thousand dollars, with Roger S. Sperry, Bruce S. Aldridge, John Dunfee, Christian Cook and John McCarthy as sureties, be and the same is hereby canceled and the city clerk is hereby authorized and directed to indorse such cancellation on said bond."

This resolution was duly certified to by the city clerk and was attached to the bond with the following indorsement:

"The within bond is hereby canceled and may be taken off the record in accordance with the resolution of the common council of the city of Syracuse adopted on June 20, 1892, a copy of which is hereto attached."

Some time during the year 1908, it was discovered that a considerable sum of money which had come into the hands of Mr. Roscoe as city treasurer had been misappropriated or lost in his office by the default of some subordinate. The receipt of this sum nowhere appears in the report of the treasurer to the council. It is not claimed, however, that he was aware of the fact, or that the accounts presented by him to the council were not presented in good faith and in the belief that they were correct; nor is any bad faith claimed on the part of the council with regard to their action in the matter.

Under this state of facts this action was begun to recover from Mr. Roscoe and his sureties the amount so misappropriated; it being claimed that the bond above referred to is still in force, and that the defendants are liable by reason of its provisions.

The question to be determined by me is whether, at the close of the evidence, and in view of the facts just stated, a nonsuit should be

granted. The result depends upon the answer to be given to various claims made on behalf of the defendants.

First. Had the common council any general authority to cancel and discharge the bond in question?

Upon this question I have but little difficulty in reaching a conclusion. It is true that the legislative powers of the city of Syracuse are vested in the common council. Revised Charter, City of Syracuse, § 18. It is given the power to make ordinances for certain specific purposes enumerated, one of which is to manage and regulate the finances, and to regulate, preserve, and dispose of the real and personal property of the city. Section 22. It may also make such other ordinances as it shall deem necessary and proper and which are not in violation of the laws of this state or of the United States. Section 24. It appointed the city treasurer (section 67) and fixed the amount of his bond (section 68). But, notwithstanding the broad language used, the common council has no power of general legislation. It and the municipal corporation which it represents have such powers only as are expressly conferred upon them, or which are fairly implied from the powers so conferred, or which are essential to enable the corporation to accomplish the purposes for which it is created. But, where the statute expressly says that a bond shall remain a lien on the property of those who have executed it until its conditions are fully satisfied, the council has no power, express or implied, to satisfy it without consideration and to deprive the corporation of the security which the statute intended to give it.

Second. Did the common council have the power to audit the accounts of the treasurer; did the action taken by it constitute an audit; and, if so, is it conclusive in favor of the defendants, so long as it remains unimpeached as to the sums properly chargeable against him? The answer depends upon the language of the statutes in effect at the time.

The charter of the city of Syracuse provided that the mayor and common council of the city of Syracuse should exercise the powers of a board of city auditors, and that that board should possess the powers and perform the duties of town boards in the several towns of the county of Onondaga as now regulated by the general statutes of this state. Charter, §§ 131, 132. The council had also, as has been seen, power to make ordinances necessary to permit it conveniently to manage and regulate the finances of the city; and it had adopted such an ordinance, requiring the city treasurer to make an annual report of all the transactions, financial or otherwise, of his department. Ordinances, c. 38.

The provisions of the general statutes of the state then in existence, concerning the power of boards of town auditors, are found in sections 46, 47, 48, and 49, subc. 2, tit. 4, c. 12, pt. 1 (5th Ed.) Rev. St., and in chapter 172, Laws 1863. The former provides generally that the town boards shall constitute a board of auditors to examine the accounts of overseers of the poor, commissioners of common schools, and commissioners of highways as to moneys received and disbursed by such officers. They are to meet annually for that purpose, and the accounts audited by them are to be filed with the town clerk

and open to the inspection of the inhabitants of the town. They are also to be produced by the town clerk at the next annual town meeting and there read by him, if required. The same board, without the supervisor, are to examine his accounts in the same manner.

The latter directs the town auditors to examine the accounts of the overseers of the poor and commissioners of highways, annually, for all moneys received and disbursed by them; and directs the commissioners of highways and all town officers who receive or disburse any moneys belonging to their respective towns to account to the board of town officers for all moneys received and disbursed by them by virtue of their office. The town auditors thereupon make a statement of such accounts and append a certificate signed by a majority of the board, showing the state of the accounts; and this statement and certificate are to be filed with the town clerk and produced by him at the next annual town meeting and publicly read.

In view of these provisions I am of the opinion that, as the board of town auditors meet and examine the accounts of the town officers as to town moneys received and disbursed by them, so the common council is to meet and pass upon the accounts of the city treasurer as to city moneys received and disbursed by him. In view, however, of the conclusion that I have reached as to the effect of their action, the question as to whether the various proceedings of the common council constituted an audit need not be determined. For the purposes of this opinion it will be assumed that they did.

What, then, is the effect of the action of the common council or of a town board in auditing the accounts of officers of the city or town?

The meaning of the phrase "to audit," when applied to claims against towns, cities or counties, is well understood. "To audit is to hear, to examine an account, and in its broader sense it includes its adjustment or allowance, disallowance or rejection." People ex rel. Myers v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739. "The verb 'audit,' as here used, means simply to examine, to adjust, and it clearly implies the exercise of judicial discretion." People ex rel. Hamilton v. Supervisors, 35 App. Div. 242, 54 N. Y. Supp. 784. The word is given a like definition in People ex rel. Brown v. Board, 52 N. Y. 224; People ex rel. Benedict v. Supervisors, 24 Hun, 413; People ex rel. Ryan v. Green, 5 Daly, 254.

Whenever a board of auditors has the power to examine and adjust accounts against a town or city and acts within its jurisdiction, its decision, in the absence of fraud or collusion, is final. It cannot be attacked collaterally. Whether a claim is a proper charge, in a case where it is doubtful and rests upon disputed evidence, and what its amount shall be, are matters for the sole determination of the board. And, however mistaken it may be, so long as it keeps within its jurisdiction and acts in good faith, the audit of the board cannot be assailed. No court may question the exercise of its discretion or may re-examine the facts to determine whether it would have reached a different conclusion.

If, therefore, it be assumed that the common council of the city of Syracuse, acting as a board of auditors, has passed upon and allowed the accounts of Mr. Roscoe as treasurer, there being no claim of fraud or collusion, just so far as it had jurisdiction to act, its conclusion binds

this court. But it, like all boards of auditors, is a tribunal of limited jurisdiction. It may act as far as the statute permits it to act and no further. If it attempts more, its action is absolutely void. If, for instance, an account is presented which the board, because of the lack of some indispensable condition, has no right to consider; if a claim is allowed which is plainly not a city charge, its determination would be void for the reason that it would in such a case have exceeded its jurisdiction. Osterhoudt v. Rigney, 98 N. Y. 222; People ex rel. Smith v. Clarke, 174 N. Y. 259, 66 N. E. 819; Nelson v. Mayor, 131 N. Y. 4, 16, 29 N. E. 814; People v. Lawrence, 6 Hill, 244; State v. Hastings, 10 Wis. 525.

The question of jurisdiction is, therefore, the essential matter to be determined; and the precise problem to be decided is this: Where an officer of a town or city presents his accounts to a board having power to audit them; where, in those accounts, the officer fails to charge himself with moneys of the town or city actually received by him— has the board of audit jurisdiction to pass upon the question as to whether or not he is charged with all the sums for which he is properly accountable?

Clearly I think it has not. Had the council full knowledge of the fact, it would have had no power whatever to release the treasurer from his liability to the city for such moneys. "A city can act only through its agents, and they can bind it only when acting for it within the boundaries prescribed by law." As they cannot bind it originally by such a release, they cannot bind it subsequently in any manner by ratifying the failure of the treasurer to account for the sums with which he is properly chargeable, or by auditing his accounts which fail to show the receipt by him of such sums. Nelson v. Mayor, 131 N. Y. 4, 29 N. E. 814.

While there is no case precisely in point, the current of authority seems to support this conclusion. It had repeatedly been held that, where charges are presented to a board of audit which are not legal charges against the county, city, or town, the alleged audit of such charges is an act in excess of jurisdiction, done without the power to make it valid, and is null and void. Such an audit may be disregarded by other officers of the county, town, or city, and is in no sense binding and conclusive. Board of Supervisors v. Ellis, 59 N. Y. 620; People v. Lawrence, 6 Hill, 244; Supervisors v. Knipfer, 37 Wis. 496; Supervisors of Richmond County v. Wandel, 6 Lans. 33; Supervisors of Chenango v. Birdsall, 4 Wend. 453, 461; Bank of Staten Island v. City of New York, 68 App. Div. 231, 74 N. Y. Supp. 284.

The failure of Mr. Roscoe to include these amounts misappropriated from his office in the accounts presented by him to the council was unknown to the latter body. They never passed upon the question as to whether these amounts were properly retained by the treasurer or had been properly expended by him. It audited his accounts as presented, and any attempt to go further or to do more would have been an act entirely without jurisdiction. I hold, therefore, that any alleged audit of the common council is not binding in favor of Mr. Roscoe or his sureties with regard to these sums not accounted for by him.

Third. May the presentation of the accounts of Mr. Roscoe to the

council and the action of that body thereon be deemed to create an account stated between the treasurer and the city?

I think not.

"An account stated derives all its force from the agreement of the parties, express or implied. It is, in effect, a new contract in writing, and is equally conclusive in an action at law. But it presupposes parties capable of making a written contract which will bind them, in the absence of fraud and mistake, although one or both may have relinquished valid demands to secure the settlement, which, if they had been allowed, would have sensibly affected the final balance."   State v. Brown, 10 Or. 229.

"But, as between public officers, upon one of whom the duty is conferred 'to audit and allow' the accounts or claims of the other, no such right exists of entering into a 'mutual accounting,' or making any such contract with each other, either express or implied, in respect to the matters involved, as gives to an account stated or a simul computassent its legal efficacy."   Opinion of Referee in Supervisors v. Wandel, approved by the General Term, 6 Lans. 33, 41.

Fourth. No facts exist in this case on which any claim of estoppel can be predicated in favor of the defendants against the plaintiff. Nor is there any proof of such laches or other conduct on the part of the city as to discharge the sureties from their obligation.

The common council passed a resolution discharging the bond in question. That they had no power to do. The fact that this resolution was without validity, it must be assumed, was perfectly well known to the defendants.

The city has failed to discover the default on the part of Mr. Roscoe, and it has failed to prosecute him therefor until, as the evidence shows, he has secured a discharge in bankruptcy.

But "mere laches upon the part of an obligee or creditor, or nonperformance of some act which might prevent loss to a surety, will not, in the absence of some express covenant or condition, discharge a surety. To be available to him as a defense, the neglect must be of some positive duty owing to him. So, also, the sureties upon an official bond are not discharged by an omission of duty by the obligee which is not owing directly to the sureties." Board of Supervisors v. Otis, 62 N. Y. 88; Inhabitants of Farmington v. Stanley, 60 Me. 472. Nor, if the action of the council was in the nature of a settlement with its treasurer, is this of any avail as a defense. Palo Alto Co. v. Burlingame, 71 Iowa, 201, 32 N. W. 259; Township of Flagg, 70 Mich. 372, 38 N. W. 284.

Fifth. The discharge in bankruptcy heretofore granted to Mr. Roscoe is no defense to this action: (a) Because the debt owing from him to the city was not duly scheduled in time for proof and allowance, and there is no evidence that the city had notice or actual knowledge of the proceedings. The burden of showing this fact is on the one claiming the benefit of the discharge. Weidenfeld v. Tillinghast, 54 Misc. Rep. 90, 104 N. Y. Supp. 712. (b) Because the debt was created by the defalcation of Mr. Roscoe while acting as a public officer. The word "defalcation" does not necessarily imply any fraud or criminal act on the part of the person guilty of it. It has a wider meaning than the words "fraud," "embezzlement," or "misappropriation." It is a defalcation where a person fails to pay over public moneys for which he is properly accountable. Matter of Butts (D. C.) 120 Fed. 966.

Sixth. The discussion as to the precise effect and meaning of the

ordinance of the common council adopted on May 25, 1908, directing the corporation counsel to bring an action to collect and recover on the bond such amounts of money paid to the treasurer and belonging to the city "as may be shown to have been stolen from or misappropriated in the office of the city treasurer and not duly accounted for," is immaterial.

The allegations in the complaint with regard to that ordinance are wholly superfluous. Without reference to these allegations, a cause of action is alleged against the defendants. A municipal corporation is authorized to sue and be sued by its corporate name; and, where an action is brought by a city in its corporate name by its proper law officers, it will be presumed that the action is authorized until the contrary appears. Lincoln Street R. Co. v. City of Lincoln, 61 Neb. 109, 84 N. W. 802; City of Belleville v. Railway Company, 152 Ill. 171, 189, 38 N. E. 584, 26 L. R. A. 681; City of Milwaukee v. Zoehrlaut, 114 Wis. 276, 90 N. W. 187; City of Seattle v. McDonald, 26 Wash. 98, 66 Pac. 145.

The charter of the city of Syracuse provided that the city might sue for and recover for any breach of an official bond given to it. Section 235. It further provided that it should be the duty of the corporation counsel to prosecute and defend all civil actions and proceedings by and against the city. But it prohibited him from commencing an action unless directed by the mayor. Section 61. This last clause does not affect the right of the city to sue. It does not limit its power so to do by any condition precedent, the fulfillment of which must be pleaded. If the corporation counsel fails to regard this restriction on his powers, the defendant is in no position to take advantage of it.

However, even if the allegation in the complaint that the action was brought pursuant to the authority conferred by the ordinance in question should be held to so limit the action as to permit a recovery only in cases directly authorized by such ordinance, the interpretation put upon it by the defendants would seem to be too narrow. The fair meaning of it is, not that the moneys for which a recovery is sought must be shown to be actually stolen from the room in which the treasurer held his office, or misappropriated in that particular room, but that they are moneys of the city, stolen or misappropriated by the treasurer or his subordinates in such a way that the treasurer was liable therefor.

I must, therefore, reach the conclusion that the motion for a nonsuit should be denied.

The only other question remaining to be determined is whether or not the plaintiff is entitled to interest from the date when Mr. Roscoe's successor took office, March 1, 1892, or from the date when the amount misappropriated was demanded from Mr. Roscoe, September 1, 1908.

Although the question is not entirely clear (see Hood v. Hayward, 124 N. Y. 1, 23, 26 N. E. 331), the weight of authority seems to be that the former of the two alternatives is the proper rule. The city was entitled to this money on the date when Mr. Roscoe turned his office over to his successor, and the general rule is that whoever receives money not his own and retains it from the owner unlawfully

must pay interest therefor. In Board of Supervisors v. Clark, 92 N. Y. 391, under a bond very similar to the present, Judge Ruger said:

"The claim of the appellant that the referee erred in allowing interest upon the amount which he found that Baker or his executor failed to deliver to his successor on the expiration of his term of office is untenable. The condition of the bond was that the treasurer shall pay according to law all moneys which shall come into his hands as such county treasurer. * * * The statutory provisions impose an active duty upon the treasurer, and a failure to perform it constitutes a breach of the conditions of his bond. The necessary and legitimate damage arising from this breach is the amount of money which the treasurer failed to pay over and the interest thereon from the day when the obligation matured. It was held that a county treasurer is chargeable with interest on all sums in his hands which he omits to account for at the annual meeting of the supervisors. Supervisors of Chenango v. Birdsall, 4 Wend. 453. The case seems to be decisive upon this point."

See, also, Clark v. Sheldon, 134 N. Y. 333, 32 N. E. 23, 19 L. R. A. 138; Sheridan v. Van Winkle, 43 N. J. Law, 125; United States v. Denvir, 106 U. S. 536, 1 Sup. Ct. 481, 27 L. Ed. 264; Supervisors v. Knipfer, 37 Wis. 496; Inhabitants of Farmington v. Stanley, 60 Me. 472.

An order may be entered, therefore, denying the motion of the defendants for a nonsuit herein, with proper exceptions to them, and directing judgment for the plaintiff upon the special verdict of the jury in the sum of $3,547.02, but, in view of the waiver by the plaintiff, without costs.

Upon the coming in of the verdict, a motion was made to set it aside and to grant a new trial, upon the exceptions and upon all the grounds specified in section 999 of the Code of Civil Procedure. The trial justice refused to entertain this motion, holding that that was unnecessary under the circumstances of the case, and that the whole matter would be brought before the Appellate Division without the need of such a motion. In this I may have erred. I will, therefore, now deny such motion, formally, as against all the defendants, and will give them a proper exception to such denial.

A proper order to that effect may also be entered.

Ordered accordingly.