POLK, County Judge, v. ROEBUCK et al.
(No. 79.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 18, 1916.)

1. COUNTIES ☞98(1)—OFFICERS—LIABILITIES ON BONDS.

Under Sp. Laws 1903, c. 25, § 1, creating a special road law for San Augustine county, making the members of the commissioners' court ex officio road commissioners of their respective districts, requiring them to execute bonds as such road commissioners, and limiting the amount of compensation they should receive, a county commissioner and the sureties on his official bond as such are not liable for amounts coming into the hands of the commissioner for road purposes in excess of the amount permitted by law; no bond having been given by him as road commissioner.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 141, 142; Dec. Dig. ☞98(1).]

2. COUNTIES ☞206(1)—COUNTY BOARD—CONCLUSIVENESS OF DECISIONS.

Under Rev. St. 1895, art. 1537, giving commissioners' courts authority to approve and settle all accounts against the county, the orders of the court are conclusive, unless appealed from, and are not subject to collateral attack if the court has jurisdiction, but, when the court exceeds its jurisdiction, the order is subject to collateral attack.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 322, 323, 326, 327; Dec. Dig. ☞206(1).]

3. COUNTIES ☞101(6)—OFFICERS—ACTIONS—PLEADING.

Though Rev. St. 1895, art. 1535, requires each member of the county commissioners' court to take oath that he will not directly or indirectly be interested in any contract with or claim against the county except for his fees of office, where a petition alleges that a commissioner collected sums to which he was not entitled, and set out the names of the persons to whom the warrants were issued, the number of warrants, the dates issued, the dates paid, and that they were for services rendered for the county, but failing to allege that the commissioner was interested in any of the claims, or that he had any assignment of any of them, or that he collected them for himself as owner, and not showing that he did not collect the claims for the real owners, it was insufficient to state a cause of action.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 157; Dec. Dig. ☞101(6).]

4. COUNTIES ☞101(6) — OFFICERS — LIABILITIES ON BOND.

A petition by a county against a county commissioner for amounts collected from the county to which he was not entitled for services rendered to the county did not show liability of sureties on his bond, even though he were personally liable.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 157; Dec. Dig. ☞101(6).]

5. COUNTIES ☞101(6) — OFFICERS — LIABILITIES.

In a petition against a county commissioner for sums paid to him in excess of the amount allowed by law for road purposes and sums collected by him on warrants to various persons for services to the county, a paragraph alleging liability for money had and received is insufficient to show liability in the absence of a showing of liability in the paragraphs setting out the facts relating to amounts received by him.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 157; Dec. Dig. ☞101(6).]

Appeal from District Court, Shelby County; A. E. Davis, Judge.

Action by H. K. Polk, County Judge, against M. C. Roebuck and others. From a judgment for defendants, plaintiff appeals. Affirmed.

J. W. Minton, of Hemphill, and T. H. Downs, of San Augustine, for appellant. Davis & Ramsey, of San Augustine, for appellees.

BROOKE, J. H. K. Polk, county judge of San Augustine county, in his capacity as county judge, and acting for San Augustine county, filed this suit on the 8th day of December, 1913, against M. C. Roebuck, as principal, G. W. Townsend, A. Wall, F. C. Graham, T. J. Wall, and M. C. Flournoy, as sureties on the official bond of M. C. Roebuck as county commissioner of San Augustine county, for certain sums of money illegally collected from the county treasurer of San Augustine county by the said M. C. Roebuck while acting in the capacity of county commissioner of said county.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

184 S.W.—33

In his petition appellant alleged that on the 24th day of November, 1910, the defendant Roebuck, as principal, and the other defendants, as sureties, made, executed, and delivered to W. C. Ramsey, county judge of San Augustine county, Tex., and his successors in office, a certain official bond in the sum of $3,000, which bond was in all respects in conformity with law and made to secure the faithful performance and discharge of all duties required of him by law as county commissioner for precinct No. 3. He further alleged that the original of said bond has been lost, and a certified copy of its record was attached to the petition. It was further alleged that the above bond was approved by the county judge in open commissioners' court on the 30th day of November, 1910, and was duly attested by the county clerk, and was filed by him on the same day. He further alleged that plaintiff was the duly elected and acting judge of San Augustine county and the successor in office of the said W. C. Ramsey, aforesaid.

Plaintiff further alleged that the defendant Roebuck qualified as county commissioner of said county on the 30th day of November, 1910, and served continuously as such officer until the ―――― day of December, 1912.

In the eighth paragraph of his petition the plaintiff alleged that on the 8th day of February, 1911, the defendant Roebuck presented his account to the commissioners' court of said county for the sum of $24 for "Reviewing roads," which was approved by the court and paid by the treasurer; that on the 14th day of February, 1912, the defendant Roebuck presented his account for $30 to the commissioners' court of said county, which was approved and paid by the treasurer. Plaintiff alleges that the order of the court approving the two above-described accounts was without authority of law and void, and the payment of same illegal.

In the ninth paragraph of his petition plaintiff alleges that on the 29th day of July, 1911, the defendant Roebuck presented his account to the commissioners' court of said county for "roadwork during the preceding quarter" for $6.95; that said account was approved and paid by the treasurer; that on the 29th day of July, 1911, the defendant Roebuck presented another account for "overseeing roadwork" during the preceding quarter for the sum of $32, and on said last-named date said account was approved, and county warrant No. 318 was issued and paid by the treasurer; that said two payments made a payment of $38.95 for work during one quarter, when under the law the defendant was entitled to not exceeding $30 for services on the road during the quarter in which his account accrued, making therefor an amount collected by said defendant of $8.95 in excess of the maximum amount allowed by law, and to the extent of this excess of $8.95 the payment was illegal, without authority of law, and void; that on the 15th day of November, 1911, the defendant Roebuck presented his account to the commissioners' court for "overseeing roadwork" in the sum of $44, which was allowed and paid by the treasurer, and which made the sum of $14 in excess of the sum allowed by law, and to that extent was illegal, and therefore void.

In the tenth paragraph of his petition plaintiff alleged that on the 29th day of July, 1911, the defendant Roebuck presented his account to the commissioners' court of said county for the sum of $8 for "receiving and letting bridges," which was allowed and paid; that during said quarter the defendant Roebuck had already presented his account for and collected the maximum amount of $30 allowed him for the preceding quarter, and therefore the payment of this account of $8 was illegal and void; that on the 17th day of August, 1911, the defendant Roebuck presented his account for "letting and receiving bridges" in the sum of $4, which was allowed and paid by the treasurer; that on the 11th day of September, 1911, the defendant Roebuck presented his account for $4 for "letting and receiving bridges," which was approved and paid; that on the 11th day of September, 1911, defendant Roebuck presented another account for $12 for "receiving and letting bridges," which was allowed and paid; that on the 15th day of November, 1911, the defendant Roebuck presented an account to the commissioners' court for $4 for "letting and receiving bridges," which was approved and paid—the above four items making a total of $24 which was received by the defendant Roebuck in excess of the $30 allowed him by law for services on the roads during the quarter covered by said accounts, the defendant having already received the maximum amount allowed him by law for such services, and that said payment of $24 was therefore illegal and not warranted by law.

In the eleventh paragraph of his petition plaintiff alleged that a superintendent of roads and bridges for San Augustine county was duly appointed on the 15th day of April, 1912, and entered upon the duties of his office; that after such appointment no payments were allowed by law to be made to the commissioners of said county for any services on the public roads and bridges, except the sum of $30 per year for reviewing the roads of his precinct; that on the 18th day of June, 1912, the defendant Roebuck presented his account to the commissioners' court of San Augustine county for $8 for "letting and receiving bridges," which was approved by the court and paid by the treasurer; that on the 16th day of August, 1912, Roebuck presented his account to the commissioners' court for the sum of $4 for "letting and receiving bridges," and said account was approved by the court and paid; that on the 30th of September, 1912, the defendant Roebuck presented his account for $2, which was approved and paid; that on the 30th day of

September, 1912, the defendant Roebuck presented another account to said court for the sum of $4 for "letting and receiving bridges," which was allowed and paid; that on the 15th of November, 1912, the defendant Roebuck presented his account for the sum of $8 for "letting and receiving bridges," which was allowed and paid; that on the 30th day of November, 1912, the defendant Roebuck presented his account for $8 for "letting and receiving bridges," which was approved and paid; that said items in this paragraph make an aggregate of $34 which was paid without authority of law, and was therefore void, and the orders approving same of no effect.

Plaintiff further alleged in paragraph 12 of his petition that at the dates set out below the defendant Roebuck collected the sums of money set out in the schedule below from the treasurer of San Augustine county, to which he was not entitled by law, and without authority of law, as follows:

| For | War. | Date Issued | Date Paid | Check No. | Purpose. | Amt. Rec. |
|---|---|---|---|---|---|---|
| T. N. Spinks | 29 | 12–16–10 | 12–16–10 | 808 | Holding election | 4.00 |
| A. M. Henley | 30 | 12–16–10 | 12–16–10 | 808 | " | 4.00 |
| M. Luce | 175 | 3–29–11 | 3–29–11 | 939 | Pauper allowance | 5.00 |
| M. Luce | 322 | 5–12–11 | 5–12–11 | 10 | " | 10.00 |
| Jas. Debose | 223 | 5–12–11 | 5–12–11 | 10 | Att. M. Luce | 15.00 |
| Dorsey Harvey | 313 | 7–29–11 | 7–29–11 | 227 | Building bridge | 87.00 |
| Tom Beard et al. | 314 | 7–29–11 | 7–29–11 | 227 | Road work | 187.00 |
| Tom Beard et al. | 325 | 7–31–11 | 7–31–11 | 235 | " | 245.50 |
| Tom Beard et al. | 391 | 8–17–11 | 8–17–11 | 307 | " | 271.00 |
| W. T. Woods | 391 | 8–17–11 | 8–17–11 | 307 | Building bridge | 36.00 |
| M. Luce | 392 | 8–17–11 | 8–17–11 | 307 | Pauper allowance | 10.00 |
| J. L. Dubose | 392 | 8–17–11 | 8–17–11 | 307 | Att. M. Luce | 15.00 |
| B. F. Nugent | 364 | 9–11–11 | 9–11–11 | 389 | Holding election | 4.00 |
| A. M. Henley | 465 | 9–11–11 | 9–11–11 | 389 | " | 2.00 |
| Tom Beard et al. | 474 | 9–11–11 | 9–11–11 | 389 | Road work | 309.90 |
| A. M. Henley | 475 | 9–11–11 | 9–11–11 | 389 | Building bridge | 92.50 |
| Bob Baker | 475 | 9–11–11 | 9–11–11 | 389 | Fixing bridge | 2.00 |
| Hy. Hammond | 475 | 9–11–11 | 9–11–11 | 389 | Building bridge | 36.80 |
| Jasper Harvey | 475 | 9–11–11 | 9–11–11 | 389 | " | 43.00 |
| Dorsey Harvey | 475 | 9–11–11 | 9–11–11 | 389 | Lumber | 13.20 |
| G. H. Roebuck | 475 | 9–11–11 | 9–11–11 | 389 | Lumber | 5.10 |
| Tom Beard et al. | 498 | 10– 3–11 | 10– 3–11 | 412 | Road work | 414.75 |
| C. L. Luce | 558 | 11–17–11 | 12–13–11 | 499 | Pauper allowance | 10.00 |
| Joe Marshburn | 559 | 11–17–11 | 12–13–11 | 499 | " | 10.00 |
| Bob Baker | 560 | 11–17–11 | 11–17–11 | 475 | Team on road | 6.00 |
| M. Lewis | 565 | 11–17–11 | 11–17–11 | 475 | Work on plows | 3.75 |
| F. A. Willis | 562 | 11–17–11 | 11–17–11 | 475 | Building bridge | 52.50 |
| Tom Beard et al. | 563 | 11–17–11 | 11–17–11 | 499 | Road work | 474.93 |
| C. L. Luce | 688 | 2–15–12 | 2–15–12 | 660 | Pauper allowance | 10.00 |
| Joe Marshburn | 689 | 2–15–12 | 2–15–12 | 660 | " | 10.00 |
| Buster Henry | 694 | 2–15–12 | 2–15–12 | 660 | Repair bridges | 15.00 |
| Mitch Hollin | 695 | 2–15–12 | 2–15–12 | 660 | Building bridge | 115.90 |
| Susie Holloway | 696 | 2–15–12 | 2–15–12 | 660 | Pauper allowance | 8.00 |
| J. W. Parker | 762 | 3–25–12 | 3–25–12 | 736 | Repairing bridge | 25.00 |
| Dorsey Harvey | 793 | 4– 9–12 | 4– 9–12 | 757 | Building bridges | 139.25 |
| Steve Garrett | 827 | 5–12–12 | 5–12–12 | 845 | Pauper allowance | 8.00 |
| C. L. Luce | 828 | 5–12–12 | 5–12–12 | 845 | " | 10.00 |
| Susie Holloway | 829 | 5–12–12 | 5–15–12 | 845 | " | 8.00 |
| Joe Marshburn | 830 | 5–15–12 | 5–15–12 | 845 | " | 10.00 |
| Martha Bowie | 831 | 5–15–12 | 5–15–12 | 845 | " | 6.00 |
| Dorsey Harvey | 901 | 6–18–12 | 6–18–12 | 970 | Building bridge | 80.00 |
| Buster Henry | 902 | 6–18–12 | 6–18–12 | 970 | " | 64.00 |
| Henderson Smith | 983 | 8–16–12 | 8–16–12 | 174 | Repairing bridge | 10.00 |
| Joe Marshburn | 984 | 8–16–12 | 8–16–12 | 174 | Pauper allowance | 10.00 |
| C. L. Luce | 985 | 8–16–12 | 8–16–12 | 174 | " | 10.00 |
| Martha Bowie | 986 | 8–16–12 | 8–16–12 | 174 | " | 6.00 |
| W. H. Ware | 57 | 9– 3–12 | 9–30–12 | 307 | Building bridge | 35.15 |
| Wm. Ware | 57 | 9–30–12 | 9–30–12 | 307 | " | 170.10 |
| Clifford Harvey | 140 | 11–15–12 | 11–15–12 | 434 | " | 74.12 |
| Joe Marshburn | 141 | 11–15–12 | 11–15–12 | 434 | Pauper allowance | 10.00 |
| C. L. Luce | 141 | 11–15–12 | 11–15–12 | 434 | " | 15.00 |
| L. Taylor | 143 | 11–15–12 | 11–15–12 | 434 | Holding election | 4.00 |
| A. M. Henley | 144 | 11–15–12 | 11–15–12 | 434 | " | 6.00 |
| T. M. Spinks | 145 | 11–15–12 | 11–15–12 | 434 | " | 4.00 |
| J. J. Spinks | 146 | 11–15–12 | 11–15–12 | 434 | " | 4.00 |
| C. K. Caldwell | 192 | 11–29–12 | 11–29–12 | 493 | " | 4.00 |
| Aaron Norwood | 204 | 11– 3–12 | 11–30–12 | 501 | Repairing bridge | 10.00 |
| Sam Sheard | 205 | 11– 3–12 | 11–30–12 | 501 | Team on road | 2.00 |
| J. E. Sowell | 206 | 11–30–12 | 11–30–12 | 501 | Bridge lbr. | 15.50 |
| J. E. Soweoo | 208 | 11–30–12 | 11–30–12 | 501 | Building bridge | 37.63 |
| | | | | | Total | $3,300.38 |

Plaintiff says that the above payments are illegal and fraudulent, because they are made for services rendered for San Augustine county, and could not legally be made to the defendant M. C. Roebuck, because he was a county commissioner of said county, and by virtue of said office was also ex officio road commissioner of said county, and could not be interested either directly or indirectly in any contract with said county nor any claim against said county, and each of said above sums of money are now due and owing to said county by the said defendant M. C. Roebuck.

In the thirteenth paragraph of his petition plaintiff alleges that the defendant Roebuck has failed and refused to pay over to the defendant or the county treasurer of said county, or to any officer for the benefit of said county, the various sums of money referred to in paragraph 8, amounting to $54, and the excess set out in paragraph 9 of $8.98, also the excess sum set out in paragraph 9 of $14, also the various sums set out in paragraph 10, amounting to $32, the various sums set out in paragraph 11, amounting to $34, and the various sums set out in paragraph 12, aggregating a total of $3,300.38, making a total aggregate of $3,443.33, and still refuses to pay over the same or any part thereof, though often requested to do so, to the damage of plaintiff and of San Augustine county, Tex., in the sum of $3,443.33, which sum is due and owing to the plaintiff and to San Augustine county by the defendant M. C. Roebuck, whereby the terms and conditions of said bond are breached, and defendants, both principal and sureties, have become bound and liable, under the terms and conditions of said bond, to pay, and promised to pay, plaintiff the sum of $3,443.33, but have wholly failed to do so, and this suit is brought to collect the principal debt of $3,-443.33, together with 6 per cent. interest thereon from the time that each of said sums was received by the said M. C. Roebuck, as aforesaid.

In the fourteenth paragraph plaintiff says that, if the said Roebuck and the sureties on his bond are not liable for the amount sued for upon the bond, then the said M. C. Roebuck, by reason of the facts set out above, became liable and bound, and promised to pay this plaintiff the sum of $3,443.33, together with legal interest thereon at the rate of 6 per cent. per annum from the date of the receipt of the various funds for money had and received which belonged to San Augustine county, and which the defendant Roebuck has converted to his own use and benefit, and to which he was not entitled by law, and which he has refused and still refuses to pay.

Plaintiff further pleads an order of the commissioners' court authorizing the filing of this suit.

The defendant Roebuck filed his first amended original answer herein on the 26th day of January, 1914, in which he pleads a general demurrer, several special exceptions, and special answers. The defendant sureties filed their amended original answer on the same day, and adopt the answer of the defendant Roebuck, and plead special exceptions and special denials. The cause came on to be heard on the 15th day of July, 1915, before the trial court, and the defendants urged their general demurrer, which was sustained by the court, to which action of the court in sustaining defendant's bill of exceptions to plaintiff's petition the plaintiff in open court excepted, and seasonably preserved and filed his bill of exception No. 1 to the action of the court in due time, and in open court gave notice of appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas, at Beaumont, filed a transcript of the proceedings in this cause, and here now presents his cause for review before this court.

[1] Appellant by his first assignment of error challenges the action of the lower court in sustaining the general exception of defendants to the plaintiff's petition, and as his first proposition says that the facts set out in plaintiff's petition show a good cause of action against appellees, and that the cause should have been heard on its merits.

The Twenty-Eighth Legislature passed an act on the 26th day of March, 1903, which took effect 90 days after date, creating a special road law for San Augustine county, Tex. Section 1 is as follows:

"That the members of the commissioners' court of San Augustine county shall be ex officio road commissioners of their respective districts and under the direction of the commissioners' court shall have charge of all teams, camping outfits, tools and machinery belonging to the county and placed in their hands by said county, and it shall be their duty under such rules and regulations as the commissioners' court may prescribe, to superintend the laying out of such roads, and the making or changing of roads, and the building of bridges. Each of said commissioners shall, before entering upon the duties of his office, in addition to his regular bond as commissioner, execute a bond of $1,000, with two or more good and sufficient sureties, payable to the county judge of San Augustine county for the use and benefit of the road and bridge fund; conditioned that he shall well and faithfully perform all the duties required of him by law, or by the commissioners' court of San Augustine county, and that he will account for all money or property belonging to the county that may come into his possession: Provided, that with the consent of the commissioners' court, any one of said commissioners shall be allowed to appoint any competent person as deputy road commissioner, who shall be required to execute the same bond that is required by the commissioners in this section, and such deputy road commissioner shall be entitled to the same compensation that is here allowed county commissioners for the same service: Provided, that county commissioners shall not be allowed any commission when a deputy road commissioner has been appointed." Section 1, Special Laws of 1903, p. 150.

Section 14 of said act provides as follows:

"Each county commissioner when acting as road commissioner, shall be entitled to $2.00 per

day for services actually performed: Provided, that he shall not receive more than $30 per quarter. Said per diem shall be paid out of the road and bridge fund, when the account shall have been approved by the commissioners' court, and the court shall not approve said account unless the commissioner presenting it shall make oath that the account is just, due, and unpaid, and said account shall specify the number of days' work actually performed by him, and that it was necessary to be done under the circumstances, and if he worked only a part of the day, the number of hours worked shall be stated, and no commissioner shall be entitled to pay as road commissioner, either for himself or deputy, while he is performing the duties of county commissioner, nor shall he receive any additional pay than that provided by this section for inspection of his road, or other road service."

Section 16 of said act creates the office of county superintendent, and provides that the commissioners' court may at its first legal term after the law has taken effect appoint a county superintendent of public roads and bridges, etc., and the said section 16 further provides that, when a county superintendent shall be appointed, the county commissioners shall receive no compensation as road commissioners, except $30 per quarter for inspecting the road once a year.

From sections 8 to 11, inclusive, of the petition it is charged that Roebuck received more compensation than he was allowed by law to receive, and suit is against him and the sureties on his official bond as county commissioner to recover said amount. The bond required of the county commissioner is required to be in the sum of $3,000, to have two or more good and sufficient sureties, and the conditions of the bond are for the faithful performance of the duties of his office, and this is the only bond that is alleged to have been made. We do not understand that the sureties on this bond on which suit is brought would be liable for funds coming into the hands of Roebuck as road commissioner, and illegally retained by him as road commissioner. The special road law above referred to required a different and separate bond, conditioned that the road commissioner will account for all money and property belonging to the county that may come into his possession as road commissioner. It is not alleged in this petition that Roebuck at any time executed the bond as road commissioner and qualified as such road commissioner. And, indeed, there is no allegation in the petition to show if the said Roebuck did, in fact, collect amounts illegally from the county, whether the same were received as county commissioner or as road commissioner. He would be road commissioner by virtue of the fact of holding the office of county commissioner, but the law, as above stated, required that he qualify before entering upon such additional duties by giving the bond. We are left to infer that the intention was to charge him as receiving the amounts illegally as road commissioner.

For the reasons above stated, the petition, with reference to allegations, from sections 8 to 11, inclusive, is subject to a general demurrer, and does not state any cause of action whatever against the sureties on the said Roebuck's bond as county commissioner.

[2] It is argued by appellees that by article 1537, Revised Statutes 1895, commissioners' courts are given authority to approve and settle all accounts against the county, and direct their payment, and that this power of the court was invoked by appellee on his claim, and that the court, in the exercise of its authority, made the order allowing it, and we are cited to the case of Callaghan, County Judge, v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 838, as holding that such an order made is conclusive unless appealed from, and cannot be collaterally attacked.

In the case of School Trustees et al. v. Farmer et al., 23 Tex. Civ. App. 39, 56 S. W. 555, Chief Justice Garrett uses the following language:

"But it is contended that the order of the commissioners' court fixing the amount at $214.88 is an adjudication of the question is a judgment that cannot be collaterally attacked, and can only be set aside or revised by proper appellate proceeding. The district court has appellate jurisdiction over commissioners' court. Article 5, § 8 [Constitution]. But there has been no legislation making provision for the exercise of such jurisdiction except in the case of damages assessed for land taken for public roads. Rev. St. art. 6477. Its jurisdiction might, however, be invoked by certiorari.

"There is some conflict of authority as to the conclusiveness generally of the orders and judgments of the commissioners' courts. In matters involving discretion, of which the court has jurisdiction, they are held to be conclusive. City of Ft. Worth v. Davis, 57 Tex. 236; Callaghan v. Salliway [5 Tex. Civ. App. 239], 23 S. W. 837; 7 Am. & Eng. Enc. of Law (2d Ed.) 1009, and authorities cited. By article 1537, subd. 8, Rev. St. of this state, the commissioners' court is given authority 'to credit, adjust, and settle all accounts against the county and direct their payment.' In this the court exercises a jurisdictional function, and, when it has exclusive jurisdiction, its judgment is conclusive, unless appealed from or reversed in the mode prescribed by law. * * * But, where the commissioners' court attempted to credit and allow accounts not legally chargeable against the county, it is an act in excess of jurisdiction, and is void. McKinney v. Robinson, 84 Tex. 496 [19 S. W. 699]. It has been held that a settlement of an account by a county board is not more sacred than a settlement between individuals," but Judge Taylor, in "Shirk v. Pulaski County, 4 Dill. 209, Fed. Cas. No. 12794, gives as the true rule the one that seems to have been adopted by the Supreme Court of this state in McKinney v. Robinson, supra. He says: 'Within the limits of their power, as conferred by statute, the action of the county court in determining the amount due a creditor of the county, in the absence of fraud, or, perhaps, mistake, binds the county; but the county court cannot bind the county by ordering a claim to be paid which is not made a county charge by statute or by allowing more than the statute distinctly limits, or by an allowance in the face of a statutory prohibition.' Since the law allowed the assessor a commission of only 1 per cent. of the taxes assessed by him upon the property in school district No. 25, the commissioners' court exceeded its authority in allowing him more; and in doing so it acted without jurisdiction of the matter, and its order making the allowance was void and subject to collateral attack. It is no defense in a suit

against the assessor by the trustees of the district for the amount paid him in excess of the commission fixed by the statute."

In the case of August-Busch Co. v. Caufield et al., 135 S. W. 244, the court, in a lengthy opinion, reviewed, among others, the case of Callaghan v. Salliway and the Farmer Case, and said:

"In Voght v. Bexar County et al., 16 Tex. Civ. App. 567, 42 S. W. 127, * * * a writ of error was refused by the Supreme Court. In discussing the legal effect of judgments of the commissioners' court, it was said: 'All the provisions of the statute having been complied with, the judgment of the commissioners' court is not subject to collateral attack. The law has provided for appeal from the judgment of commissioners' courts; and appellant, if dissatisfied with the judgment, should have used the statutory means for setting it aside' "

—quoting Elliott on Roads and Streets, 259, as saying:

"In all cases where there is a permanent tribunal, having jurisdiction to approve or reject a report, to hear and determine controversies, there is a tribunal competent to render a judgment strong enough to resist collateral attack."

7 Am. & Eng. Enc. of Law (2d Ed.) p. 1003, is quoted as saying:

"A board of county commissioners, in the audit, adjustment, allowance, or disallowance of a claim against a county, exercises judicial functions and, having exclusive jurisdiction its judgment in the absence of fraud, is conclusive, both upon the board and the parties interested, unless appealed from or reversed in a mode prescribed by law"—citing numerous cases in support of the text.

In 11 Cyc. 404, it is said:

"Ordinarily the decision of a board in the exercise of jurisdictional discretion is conclusive, and will not be controlled or reversed, unless it is a clear abuse of such discretion, or unless there is evidence of collusion or fraud. Where the county commissioners of the county do public business according to the discretion provided for them, new commissioners are bound by their acts. Decisions, judgments, or orders of a county board, acting jurisdictionally in a proceeding in which they have jurisdiction, being conclusive, as the judgment of a court of record, cannot be collaterally attacked, and are only reversible upon appeal or other appropriate proceeding. Where, however, a board or court exceeds its jurisdiction and makes an order without authority, such order, being void, is subject to collateral attack."

The following cases are cited by Judge Garrett from other jurisdictions as supporting the doctrine that the judgments and orders of commissioners' courts are not subject to collateral attack: Waugh v. Chauncey, 13 Cal. 11; Stingley v. Nichols, 131 Ind. 214, 30 N. E. 34; Anderson v. Claman, 123 Ind. 471, 24 N. E. 175; White v. Fleming, 114 Ind. 560, 16 N. E. 487; Knox County v. Barnett, 106 Ind. 599, 7 N. E. 205; Brewer v. Boston Ry. Co., 113 Mass. 52; Blanchard v. Bissell, 11 Ohio St. 96; Bartlett v. Eau Claire Co., 112 Wis. 237, 88 N. W. 61; Bennett v. Hetherington, 41 Iowa, 142; Beaman v. Leake County, 42 Miss. 237; and others.

It will be seen from the decisions that, if the court has jurisdiction, the orders of such court in such matters as complained of in this case are conclusive, unless appealed from, and are not subject to collateral attack. But, when the court exceeds its jurisdiction, as under the allegations in the petition it did in the instant case, the order is void, and therefore subject to collateral attack.

[3] In section 12 of the petition appellant alleges that appellee Roebuck collected certain sums of money to which he was not entitled, and that the names of the persons to whom the warrants were issued, the number of the warrants, the dates issued, the dates paid, and the number of the treasury warrants are set out, and appellant says that the said payments were illegal, because the payments were made for services rendered for San Augustine county, and could not be legally made to the said Roebuck, because he was county commissioner, and that said Roebuck could not be interested, either directly or indirectly, in any contract of the county.

There is no allegation that the said Roebuck was interested in any of the claims which appear to have been made by various persons for holding elections, pauper allowances, lumber, building bridges, roadwork, etc., and the names of the parties by whom said services were performed are set out. There is no allegation that the said Roebuck had any assignment of any kind whatever to any of said claims. There is no allegation in the petition that the said Roebuck, as county commissioner, collected the claims for himself as owner or that they were assigned to him, and nothing to negative the idea that the said Roebuck was only collecting the claims for the real owners of the same.

It has been held under Revised Statutes 1895, art. 1535, requiring each member of the county commissioners' court to take oath that he will not directly or indirectly be interested in any contract with or claim against the county, except for his fees of office, and under article 1537, Revised Statutes, making it the duty of such court to provide and keep in repair the courthouse and jail, and audit and settle all accounts against the county, that a commissioner cannot take and enforce an assignment of the claim of a contractor against the county, to accrue on an unfinished contract to build a jail, and the court, in passing on said case, used the following language:

"However honest appellant may have been in his intentions the contract by virtue of which he claims that he is entitled to the money is in derogation of the statute, and contrary to the spirit, if not the letter, of his official oath. His pecuniary interest would have been directly opposed to the interest of the county in the event of a rejection of the work contracted for, and his private pecuniary interest might have induced him to act in violation of his duty as county commissioner. Contracts in their nature calculated to influence the action of public officers and the effect of which is to influence them one way or the other are against public policy and void. Robinson v. Patterson, 71 Mich. 149, 39 N. W. 24, and authorities cited; Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 899; Rigby v. State,

27 Tex. App. 55, 10 S. W. 760; Brown v. Bank, 137 Ind. 655, 37 N. E. 158, 24 L. R. A. 206.'' Knippa v Stewart Iron Works, 66 S. W. 324.

[4] We do not see how the bondsmen of said Roebuck as county commissioner could be held liable under section 12 of the petition if the other proper allegations stating a cause of action had been made.

[5] Section 14 of the plaintiff's petition cannot stand by itself alone, in connection with the allegations contained in previous paragraphs of the petition; for, if the said previous paragraphs do not allege a cause of action, section 14 is not aided in this respect, and within itself it is not sufficient.

For the reasons above set out, we are of opinion that the action of the lower court in sustaining the demurrer to plaintiff's petition was correct.

The appellant's assignment is therefore overruled, and this case is in all things affirmed.