FULLER & HILLER HARDWARE COMPANY, Appellant, v. SHANNON & WILLFONG et al., Appellees.

OCTOBER 18, 1927.

REHEARING DENIED JANUARY 20, 1928.

*Nichols, Tipton & Tipton,* for appellant.

*W. G. Harvison* and *E. H. Pollard,* for appellee.

DE GRAFF, J.—The legal quarrel in this case is between two subcontractors, with reference to materials furnished by them to the primary contractor in carrying out its contract in the construction of Primary Road Project No. P-149, Lee County, Iowa. The only question presented for determination involves the *place of filing* of said claims. Should a subcontractor's claim be filed with the state highway commission or with the county auditor?

In the instant case, the appellant, to whom it is conceded

there is due and unpaid the sum of $408, with interest, filed its itemized sworn claim on April 11, 1924, with the Iowa state highway commission at Ames, Iowa. On or about April 15, 1924, the appellee filed its itemized sworn statement of its demand, admitted to be due and unpaid, in the sum of $600.73, with the Iowa state highway commission, the county auditor of Lee County, and the county engineer of Lee County. It is shown that there is an unpaid balance of $546.38 retained on the contract for said primary road project. Section 3103, Code of 1897, provides:

"Any party in interest may cause an adjudication of the amount, priority and mode and time of payment of such claim, by an equitable action in the district court of the proper county."

The pivotal point in this case is in the language of Section 3102, Code of 1897, as amended by Section 2, Chapter 380, Laws of the Thirty-eighth General Assembly (Sections 10305, 10308, Code of 1924), which provides that every mechanic, laborer, or other person who, as subcontractor, shall perform labor upon or furnish materials for the construction of any public improvement not belonging to the state, shall have a claim against the public corporation constructing such improvement for the value of such services and material, not in excess of the contract price to be paid for such improvement, "nor shall such corporation be required to pay any such claim before or in any different manner from that provided in the principal contract. Such claim shall be made by filing with the public officer through whom the payment is to be made an itemized sworn statement of the demand" within the time specified by statute, "and such claims shall have priority in the order in which they are filed."

It is the contention of the appellee that the public officer in the instant case through whom payment is to be made is the county auditor, with whom the claim was, in fact, filed by the appellee. It may not be questioned that the contract for the improvement is between the county and the contractor. The debtor to the contractor is the county. The work is performed under the supervision of the county, exercised through the county engineer. Section 5, Chapter 237, Laws of the Thirty-eighth General Assembly, provides that the state highway commission shall open an account with each county in the state in

relation to the primary road fund, and shall first credit each county with any unused portion of the allotment of the Federal-county-co-operation road fund, as specified in such statutory provision. The commission shall each year credit each county with its allotted portion of the primary road fund, and charge it with the amount of all duly and finally approved vouchers for claims properly chargeable to said county, and shall keep each county fully informed as to the state of its account.

It is apparent that the account between the county and the contractor is kept in the office of the auditor, who is the clerk of the board of supervisors. A certain percentage of the contract price is withheld from the contractor by the county until final payment is made by the county. Intermediate payments, as well as final payment, are made by the county through warrants or checks drawn by the auditor upon the proper fund.

As indicated heretofore, this suit was commenced for the purpose of reaching money in the hands of the county, unpaid to the contractor. All payments made by the county on the undertaking were made by warrants drawn by the county auditor against the county treasurer, by whom the same were paid. It is quite clear that the logical place for the filing of claims by subcontractors is the office of the county auditor of the local jurisdiction.

We will not incumber this opinion with the genesis of the state highway commission. See Section 4622, Code of 1924. Its duties are defined. Section 4626, Code of 1924. There is no mention of power vested in the commission to issue warrants in payment of county improvements. Section 6 of Chapter 237, Laws of the Thirty-eighth General Assembly, provides, with respect to the expenditure of a county's allotment from the primary road fund:

"Vouchers therefor must be approved by the board of supervisors and forwarded to the highway commission for final audit, approval, and payment as provided in Section thirteen (13) hereof."

Section 13 provides:

"Duly approved voucher claims, payable at the office of the county treasurer, shall be forwarded by the state highway commission to the county auditor, who shall issue warrant therefor, and the county treasurer shall pay the same * * *. Partial

payments may be made on work during the progress thereof,
* * *."

It would appear, therefore, that "the public officer through
whom payment is to be made" is the county auditor. His war-
rants are paid by the county treasurer, and between them the
account is kept. We discover no provision of the law relative to
an account between the commission and the county treasurer.
The commission audits, which means to hear, examine, and ad-
just, or certify.

An "audit" is an official examination of the account, com-
paring the vouchers with the charges and fixing the balance.
Webster's New International Dictionary.

Section 12 of Chapter 237, supra, in defining the powers
and duties of the commission, includes "supervising the ex-
penditure of all funds paid on account of such work by the
counties of the state, * * *." This contemplates that such ex-
penditures are made by the counties, through warrants issued
by the county auditor upon the county treasurer. Section 3,
Chapter 188, Acts of the Thirty-ninth General Assembly, has no
material bearing on this controversy. It has to do with the
bookkeeping between the county and the commission, in the
event that the warrants drawn on the account of any county
shall be in excess of the amount allotted to its primary road
fund. In such case the county issues its anticipatory certifi-
cates, and forwards them to the state treasurer, to await a time
when the allotments to the primary road fund are sufficient to
take up such certificates. The commission charges the county
with interest on such certificates. The state treasurer is notified
by the commission when there is a sufficient amount in the
primary road fund allotment to return such certificates, and the
state treasurer then returns the certificates to the county treas-
urer for cancellation and return. This provision, in effect, cre-
ates a loan by the state to the county in the amount of such
certificates, which loan is repaid when the condition of the pri-
mary road fund is sufficient, the county paying interest.

The state highway commission is not the governing body of
a county. The commission is simply an agency of the state for
certain purposes. Without further comment, we conclude that
the auditor is the "public officer" contemplated and intended by
the language of Section 3102.

As bearing, in a general way, on the proposition involved herein, see *Green Bay Lbr. Co. v. Thomas*, 106 Iowa 420; *Wackerbarth & Blamer Co. v. Independent Sch. Dist.*, 157 Iowa 614; *Francesconi v. Independent Sch. Dist.*, 204 Iowa 307.

The decree entered by the trial court is—*Affirmed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.