## WILLIAMS v. TOMPKINS.

### No. 10842.

Court of Civil Appeals of Texas. Dallas. June 20, 1931.

Rehearing Denied Oct. 3, 1931.

J. H. Synnott, of Dallas, for appellant.

J. J. Collins, City Atty., and A. A. Long, W. Hughes Knight, and H. P. Kucera, Asst. City Attys., all of Dallas, for appellee.

## 108

VAUGHAN, J.

This is an appeal prosecuted from a judgment denying to appellant a writ of mandamus against appellee as auditor of the city of Dallas and sought to compel appellee as such auditor to issue and countersign a proper warrant to pay the amount of an award made to her in compensation for personal injuries. As to the allegations upon which appellant predicated her right to the relief sought, it is only necessary to reproduce the following, viz. that the injuries received by her were in consequence of having been run over by a motorcycle officer of the city of Dallas on September 6, 1926; that a claim for compensation for loss from such injuries was presented and filed with the city December 30, 1926, and was by its board of commissioners duly and properly audited and allowed on December 21, 1928, as evidenced by a formal order of that date entered allowing said claim in the sum of $1,716.52 and ordering same paid; that it was the duty of appellee, in his official capacity, to issue and countersign all vouchers and checks, to pay all accounts and claims ordered paid by the board of commissioners of the city of Dallas (including appellant's claim); and that no such account or claim can be collected except upon a check or voucher issued and countersigned by him as such auditor.

In the discussion of the several material questions presented by this appeal, the case, as developed on both theory and fact by appellant and appellee, respectively, will be reflected; therefore, a further statement of the case as made by the pleadings will not be necessary. Following are all of the material facts established by the evidence to have existed from the time appellant was injured to the date the order allowing her claim was entered.

On September 6, 1926, appellant "was struck by a motorcycle ridden by a traffic policeman and sustained bruises and contusions of her right leg and thigh, a deep laceration of her left thigh and back, which were severely bruised, sprained and injured internally, her left foot and ankle severely injured and a compound-comminuted fracture of both bones of the left leg just above the ankle."

On December 30, 1926, Dr. Lane B. Cooke, city health officer, made the following report to the board of commissioners of the city of Dallas as to the condition of appellant: "Mrs. Williams is confined to the bed or a chair from which she is unable to arise even with the aid of crutches. Movement in an effort to arise produces severe pain in the small of the back; the heel of the left foot cannot be brought to the floor, and no weight can be tolerated on the left leg. The bones of the left leg which were broken into many small pieces and driven through the flesh and out through the skin have again but feebly united; the leg somewhat shortened and not entirely straight, and leg and foot swollen to nearly twice the normal size. Over the site of the fracture there is a large reddish fluctuating area which appears to be caused by a piece of a dead bone which is separating from the more healthy tissue and will ultimately form a chronic discharging ulcer and will have to be removed surgically, and may continue as a chronic osteo-myelitis requiring repeated operations and possibly the amputation of that leg. It is my opinion that Mrs. Williams will never again regain the use of her left leg, may never be able to walk again, even with the use of crutches, and certainly will never be able to perform any part of her housework again. She is totally and permanently disabled."

On December 21, 1928, an order was entered by the board of commissioners on petition of appellant for redress on account of the injuries sustained by her, which in effect directed the city auditor to pay appellant the sum of $1,716.52 in settlement of her claim for damages, sustained by her on September 6, 1926; the said order further recites that appellant was struck by a motorcycle ridden by H. D. Miller of the police department, and directs said sum to be paid out of suits and accounts fund, and instructed the city attorney to draw the necessary release, and provides that out of said sum of $1,716.52 appellant should pay $641.52 to the city of Dallas, said sum representing accumulated taxes on appellant's homestead, and directed that the doctor's bill should also be paid out of said sum.

Following are all of the material facts established by the evidence to have existed in support of appellee's defense:

On July 12, 1929, the new city government —composed of J. Waddy Tate, mayor, and Wylie, Fouts, Harris, and Graves, commissioners—passed an order revoking the order of December 21, 1928, allowing appellant the sum of $1,716.52 in settlement of her claim for injuries received by her September 6, 1926, and as grounds for said rescission the following statement is contained in said order of July 12, 1929:

"Whereas, heretofore, on the 21st day of December, 1928, the Board of Commissioners of the City of Dallas passed an order providing that the City of Dallas pay to Mrs. Lizzie (Lucy) Williams, widow, the sum of $1,716.52; and,

"Whereas, it appears upon investigation of said Board order and the claim of the said Mrs. Lizzie (Lucy) Williams that there was never any legal liability existing against the City of Dallas for and on behalf of the said Mrs. Lizzie (Lucy) Williams, and that the City of Dallas was at no time legally obligated to pay Mrs. Lizzie (Lucy) Williams any sum of money or to make compensation to the said Mrs. Lizzie (Lucy) Williams in any manner; and,

"Whereas, it appears that the said Board order which was passed on the 21st day of December, 1928, was passed and enacted without legal consideration, and that order was void and invalid."

That appellant, as owner of lot 6 and 15 feet of lot 6, block 2/1008, Maple avenue, was due the city of Dallas taxes, penalties, and interest aggregating $641.52 up to December 15, 1928. By letter of date July 12, 1929, written by A. A. Long, assistant city attorney, addressed to the mayor and board of commissioners, they were advised that, in the opinion of said assistant city attorney, appellant's claim for personal injuries, by virtue of having been struck and injured by one Miller, motorcycle policeman of the city of Dallas, was not a valid claim against said city, and that there had been no legal liability resting upon said city by virtue of said accident. The following excerpt from the appellant's first amended original petition was offered in evidence by appellee:

"That heretofore, to wit, about the 6th day of September, 1926, the plaintiff was injured by being struck by a motorcycle ridden by one H. D. Miller, a member of the police department of the said City of Dallas, Texas, who was employed by the said City as a traffic policeman, whose duty was to assist the City in the control and regulation of traffic in and upon a street."

"That at the time the said officer and servant of the City of Dallas was acting within the scope of his employment under the City, in and about its business as a municipal corporation, in keeping its streets cleared of traffic jams, speeding vehicles, and directing and controlling the traffic, and performing such other duties in connection with said traffic and municipal business of said City upon its streets and sidewalks, as he might be called upon from time to time to perform by the police or other departments of said City."

H. B. Miller, witness for appellee, testified as follows: "I was riding a motorcycle out on Maple Avenue, in the City of Dallas, on September 6, 1926, when I struck a lady over here on Maple Avenue, and she appears to be Mrs. Williams, the plaintiff in this case. At that time I was patrolling the streets of the City of Dallas, after a speeder, at that particular moment. I am a traffic officer, that is I was a traffic officer at that time, employed by the City of Dallas, in the motorcycle department, in the police department. I was working under the orders of Chief Trammell, Chief of Police of the City of Dallas. My hours at that time were from three to eleven in the afternoon. * * * Just before this accident I was in a filling station. I do not remember whether I just came out of there when I struck her, I do not remember whether I came out of the filling station or not, I had just taken off after a speeder, but I do not remember whether it was in the filling station or whether I was parked by the side of the street."

Appellee testified in reference to the refusal to pay the claim as follows: "I refused the approval of the claim because the City Attorney told me that it was an illegal claim, that is the reason, and there was no funds to pay it. I would have paid it if the City Attorney had told me to pay it, and if there had been an appropriation made. * * * At the time I refused to issue the voucher, I knew that the Commissioners had entered an order allowing it, and I refused to issue because I thought they made a mistake of law, and that the City Attorney had; that the Commissioners made a mistake of law, and that first order, at least, was illegal, I asked them later, about the matter, in taking up those things, and I asked the City Attorney; and if he advises me to settle it then I go into the matter, and advise with him about them. At the time the voucher was submitted to me I was informed it was illegal, and that is the reason I have continued my refusal to pay it, up to now."

That since the order of date July 12, 1929, repealing the order of date December 21, 1928, no order had been entered by the board of Commissioners of the city of Dallas approving and directing the payment of appellant's claim. That H. P. Kucera, member of the legal department of the city of Dallas, advised the mayor and board of commissioners, prior to the passing of the order of date December 21, 1928, by written opinion, that no legal liability existed upon the city of Dallas on account of appellant's claim, and that, in disregard of this opinion, said order was passed.

 The determination of this cause largely depends upon the legal effect of and the correlation of the following provisions of the city charter of Dallas, viz., section 9, art. 3: "The Commissioners named as the head of each department shall audit all accounts or claims against it, unless he be absent or fail so to do, in which event the Mayor shall appoint another Commissioner to act in his stead during his absence, or to audit such claims and accounts as the said Commissioner shall fail or refuse to act upon; but before payment all accounts shall be acted upon and approved by said Board of Commissioners at a meeting of said Board."

Section 3, art. 4: "It shall be the duty of the auditor to examine in detail all bills, accounts and claims against the said city, and if found correct, to sign his name in approval thereof, but if found incorrect he shall return them to the party presenting the same for correction. He shall be the general accountant of said city, and shall keep in books regular accounts of all real, personal and mixed property of the said city; of all receipts and disbursements of money; and under proper heads, separately, each source of receipt and

the cause of each disbursement; and shall also keep an account with each person, including the officers who have money transactions with said city, crediting amounts allowed by proper authority, and specifying the particular transaction to which such entries apply."

As to the legal effect of said provisions of section 9, the commissioners of the city of Dallas are made its audit board; the primary work in that respect being divided between the four city commissioners, each commissioner being required to audit all accounts and claims against the department of which he has been selected head. That, in order for an account or claim so audited by a Commissioner to be paid, same "shall be acted upon and approved by said Board of Commissioners at a meeting of said Board." Said language of section 9, supra, definitely and exclusively designates and appoints the commissioners, individually and collectively, the audit board of the city of Dallas. No legal meaning less in effect can be given said language than that, after an account or claim has been "audited" by the head of the proper department, acted upon and approved by said board, such account or claim has been established for payment.

To "audit" means to hear, determine, and adjust or certify, and "an audit" means that an official examination has been made of an account or claim, comparing vouchers, charges, and fixing the balance. Fuller & Hiller Hdwe. Co. v. Shannon & Willfong et al., 205 Iowa, 104, 215 N. W. 611, 613; O'Neil v. State, 223 N. Y. 40, 119 N. E. 95, 96. Therefore, in making an audit of appellant's claim, said board was vested with the jurisdiction to hear evidence, pro and con, in reference thereto, determine the validity of said claim and the liability thereunder, make adjustments thereon, and to certify the conclusion reached by said board in reference to said claim. This involves, not only an official examination of said claim, but a judicial act in fixing the amount of liability. New York Catholic Protectory v. Rockland County, 212 N. Y. 311, 106 N. E. 80, 81; Id., 159 App. Div. 455, 144 N. Y. S. 552, 556; Conover v. West Jersey Mortgage Co., 96 N. J. Eq. 441, 126 A. 855, 861; Travelers' Ins. Co. v. Pierce Engine Co., 141 Wis. 103, 123 N. W. 643, 644; City of Syracuse v. Roscoe, 66 Misc. Rep. 317, 123 N. Y. S. 403, 408; Territory v. Grant, 3 Wyo. 241, 21 P. 693; People v. Jefferson County Sup'rs, 35 App. Div. 239, 54 N. Y. S. 782, 784; People v. Board of Apportionment & Audit, 52 N. Y. 224, 227; People ex rel. Donlon v. Board of Town Auditors of Town of Pelham, 74 Hun, 83, 26 N. Y. S. 122, 124.

■ In New York Catholic Protectory v. Rockland County, 159 App. Div. 455, 144 N. Y. S. 552, supra, it is held that to audit is to hear, determine, and in its proper sense includes the adjustment or allowance, disallowance or rejection of a claim; and in Conover v. Mortgage Co., supra, the court held that to audit an account is to see that accountant is charged with everything with which he is chargeable and nothing is placed on the credit side to which he is not justly entitled to credit. In City of Syracuse v. Roscoe, supra, it was held: "The meaning of the phrase 'to audit,' when applied to claims against towns, cities, or counties, means to hear, to examine an account, and, in its broader sense includes its adjustment or allowance, disallowance, or rejection; and the verb 'audit,' as so used, means simply to examine, to adjust, and clearly implies the exercise of judicial discretion."

By the provisions of section 3, supra, it was not intended to create, and there was not created, the position of auditor, as that term is defined above, or to duplicate the duties enjoined upon the commissioners as the audit board of the city of Dallas; or to confer upon the one selected under the provisions of said section 3 as "auditor for the City of Dallas" the jurisdiction, power, and authority conferred by the provisions of section 9, supra, upon the commissioners individually and collectively, as the audit board of said city; but, to the contrary, the language of said section 3 only confers upon the one selected under the provisions of said section 3 the duty that generally belongs to an accountant, viz. to examine as one skilled in or who keeps books of accounts to ascertain if the result reached, as shown by the items of an account or claim being examined, is correct or accurate. The specific duty required to be performed, viz. "to examine in detail all bills, accounts and claims against the said city," is but an additional safeguard against errors of calculation being made both as to the items composing the account or claim and the amount allowed therefor. This is clear from the following language: " * * * And if found correct to sign his name in approval thereof"; the word "correct" having reference to the items of and the amount for which the account or claim was allowed, as shown by the record of the proceedings in reference thereto. In this connection, the additional language of said provision is quite significant, viz.: " * * * But if found incorrect he shall return them to the party presenting the same for correction." This certainly excludes the idea that appellee, as such accountant, provided for by said section 3, in making the examination of accounts and claims against the city of Dallas, is clothed with judicial determination and acts as a special tribunal when performing such duty. This is borne out by the fact that appellee, as such auditor on a claim or account being found correct, is required "to sign his name in approval thereof"; and on the other hand, if found incorrect, he is required to return such claim or account to the party presenting same for cor-

rection; not to correct the work performed by the board of auditors provided for by said section 9, supra, but undoubtedly only for the correction of some mathematical or clerical error in the amount of the account or claim. This would not be the case if the examination was for the purpose of ascertaining whether or not the audit made by the board of commissioners involving judicial determination was correct; for, if so, certainly a claim or account "found incorrect" would, by said section 3, be required to be returned to the board of commissioners. This we think sufficient to show that appellee, as "auditor" appointed under said section 3, has no power to revise an audit of an account or claim made under section 9, supra, or refuse to countersign a warrant drawn in payment of a claim that has been audited, acted upon, and approved for payment under the provisions of section 9, supra, unless it should appear from the proceedings had in reference thereto that such audit was obtained by fraud or collusion or from the face of such audit that same was illegally made. In either case, appellee would not only be warranted, but it would be his duty, to withhold the countersigning of a warrant issued for the payment of such claim. Superior Incinerator Co. v. Tompkins (Tex. Civ. App.) 37 S.W.(2d) 391.

▉ Section 9, art. 3, supra, by unmistakable definite language fixes the jurisdiction, power, and authority with and upon the four city commissioners acting primarily, individually as the head of one of the departments of the city government, and then collectively as a board, to audit all accounts and claims against the city of Dallas. Therefore it is a pertinent inquiry, viz., in what capacity do the commissioners act when discharging the duties required of them by the provisions of said section 9? We think undoubtedly that, in passing upon claims and accounts against the city, said commissioners as a board act in a judicial capacity and function as a special tribunal. Polk v. Roebuck (Tex. Civ. App.) 184 S. W. 513, 517; Williams v. Castleman, 112 Tex. 193, 247 S. W. 263; Padgett v. Young County (Tex. Civ. App.) 204 S. W. 1046, 1052; Smith v. Town of Anson (Tex. Civ. App.) 160 S. W. 114; People ex rel. Smith v. Clarke, Mayor et al., 174 N. Y. 249, 66 N. E. 819, 820. In the last cited case it was held that: "The rule which forbids the reopening of a matter once judicially determined under competent jurisdiction applies as well to decisions of special and subordinate tribunals as to the decisions of courts exercising general judicial powers * * * and decisions of boards of audit have been considered as embraced within the principle."

Certainly the contention cannot be well founded that, by virtue of said section 3, art. 4, there is conferred upon appellee the same discretionary powers that are delegated to the commissioners of the city of Dallas by said section 9 for the purpose of discharging the duties required of them by the provisions of said section. What authority did the new city administration have to revoke the order of date December 12, 1928, passed by its predecessors, it not appearing upon the face of said order that it was induced by fraud or collusion, or was made in violation of some provision of the law applicable to and prohibiting the making of same?

▉ As to the acts of a board of audit, it is stated in 44 C. J. 1448, § 4643, that same, within its jurisdiction, in the absence of fraud or collusion, are final and conclusive, and cannot be questioned in a collateral proceeding.

In the instant case, there was neither allegation nor proof of collusion or fraud, nor illegality upon the face of the audit; therefore the power did not rest with the new city government to revoke the order so entered by their predecessors in authority. Busch & Co. v. Caufield (Tex. Civ. App.) 135 S. W. 244; Brown v. Ruse, 69 Tex. 589, 7 S. W. 489; Edmonson, County Atty., v. Cumings (Tex. Civ. App.) 203 S. W. 428; Polk v. Roebuck, supra; Williams v. Castleman, supra.

As to the duties of appellee, same are well defined in section 3, art. 4, supra, viz.: "To examine in detail all bills, accounts, and claims against the said city"; this for the purpose of ascertaining whether or not same are correct, as evidenced by the following provision of said charter: "And if found correct, to sign his name in approval thereof, but if found incorrect he shall return the same to the party presenting the same for correction." This certainly cannot be construed to confer upon the "city auditor" the powers of a special or subordinate tribunal, for that construction would, without justification, create an irreconcilable conflict between said article 4 and section 9 of article 3 of said charter. The balance of said section provides for details that have, in no respect, any relation to the auditing of a claim against the city, as embraced within the language of said section 9, art. 3, and, on the whole, said article 4 only conferred upon appellee officially clerical duties; in no respect judicial. Chrestman v. Tompkins (Tex. Civ. App.) 5 S.W.(2d) 257. However, if it should appear upon the face of the audit of an account or claim that same was obtained by fraud or collusion, or was illegal, in that it was in violation of the provision of an ordinance or some other provision of the law applicable to the claim or account allowed, then certainly it would be his duty to refuse to sanction an order thus wrongfully made. Superior Incinerator Co. of Texas v. Tompkins (Tex. Civ. App.) 37 S. W.(2d) 391.

The audit of appellant's claim was under the jurisdiction of the commissioner named

as the head of the police and fire department, who made the preliminary audit required by section 3, supra, and then passed within the jurisdiction of the board of commissioners. Therefore, in the absence of fraud or collusion, existing as a matter of fact, or of illegality on its face, the audit was final and conclusive and not subject to collateral attack, or to be questioned in an indirect proceeding. 44 C. J. 1448, § 4643; People ex rel. Smith v. Clarke, Mayor et al., supra. From Smith v. Clarke, supra, we make the following quotation, as being very appropriate to the instant case: "An illegal audit can, of course, be attacked either directly or collaterally, because it is void, but not so in case of an audit that is based upon a legal power to act, but is erroneous as to some matter of fact or law. The rule which forbids the reopening of a matter once judicially determined under competent jurisdiction applies as well to decisions of special and subordinate tribunals as to the decisions of courts exercising general judicial powers * * * and decisions of boards of audit have been considered as embraced within the principle. * * . * Under this rule it was not in the power of the comptroller to reaudit the claim which had been legally audited by his predecessors in office. * * * The foregoing view of this proceeding is not affected by the allegation in the comptroller's answering affidavit that the relator had printed only 776 folios of matter, which, at the legal rate, would amount to only $388. This allegation raises no issue of fact, because it does not contradict any of the statements in the relator's moving papers. It shows what the comptroller did, but throws no light upon the acts of the two auditing committees which preceded him. The most that can be claimed for it is that it shows the previous audits to have been either illegal or erroneous. But that is not enough, for the obvious reason that, if there was mere error in the audits, they cannot be reviewed in this proceeding; and, if they were illegal, there is no legal proof of the fact, and we cannot presume illegality." Busch v. Caufield, Brown v. Ruse, Polk v. Roebuck, Williams v. Castleman, supra.

 Under the facts of this case, said audit was not subject to be vacated by the Tate administration, as the auditing board of that administration had no power to reaudit appellant's claim, same having been, upon the face of the record, legally passed upon by their predecessors in office. The act of the board in auditing appellant's claim cannot be affected by the evidence introduced by appellee to justify his refusal to countersign warrant in favor of appellant as ordered by said board. This evidence raised no issue of fact, in that said audit was not questioned thereby. The course pursued by appellee, in reference to said audit was revealed,

but did not present the facts that were before and upon which said board acted in making said audit. At most, the probative effect of said evidence was to show that the act of said board, in approving and ordering appellant's claim paid, was either illegal or erroneous, but that will not suffice, for the apparent reason that, if there were error made in the audit, same may not be here reviewed, and, if illegal, no legal proof thereof was adduced, and illegality is not to be presumed. Especially is such presumption prohibited where facts could have existed, and it was not shown by the record that same did not exist, upon which the audit could have been properly predicated; that such facts could have been present and acted upon, we cite the following cases: Carrington v. City of St. Louis, 89 Mo. 208, 1 S. W. 240, 58 Am. Rep. 108; Shinnick v. City of Marshalltown, 137 Iowa, 72, 114 N. W. 542; Town of Johnson City v. Wolfe, 103 Tenn. 277, 52 S. W. 991; Levin v. City of Omaha, 102 Neb. 328, 167 N. W. 214; 43 C. J. 921, 937, 966; Smith v. Arnold (Tex. Civ. App.) 251 S. W. 315; City of Desdemona v. Wilhite (Tex. Civ. App.) 297 S. W. 874; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909.

 Therefore, inasmuch as the officer, at the time he inflicted the injuries sustained by appellant, could have been engaged in a strictly municipal matter, as distinguished from a duty purely governmental in character, making the city of Dallas liable for such action, we must presume, which presumption, under the state of the record before us, is indisputable, that the city commissioners in auditing appellant's claim decided that, on grounds legal, the city was liable, and that question was not reopened in this litigation; in order to reconsider whether or not said officer might have been engaged in those duties which made him an officer of the state, in enforcing its traffic laws, and therefore the city was not liable. In other words, under the state of the record presenting this case, it is not for us to now inquire what the officer was doing at the time appellant sustained her injuries, it being sufficient for the disposition of this appeal for us to know, and it is all that we may inquire into, viz. whether it was probable for said officer to have been engaged in such an errand or service as made the city liable. Having determined that such was reasonably possible, then, in aid of the validity of the city's judicial act, we are to presume that its audit board at that time made proper inquiry and determined that the city was liable on account of the injury so received by appellant.

 Appellee very earnestly insists that, "at the time of the enactment of the board order allowing the claim, the facts recited therein show that the claim was barred by the two years' statute of limitation, if any

liability ever existed on the part of the City of Dallas." This cannot be sustained, as the uncontradicted evidence established the following facts, viz.: That appellant sustained the injuries complained of September 6, 1926; that on account thereof her claim was filed in the office of the city secretary December 30, 1926, and referred to the legal department December 31, 1926, by the board of commissioners; that said claim was primarily audited by Commissioner Parker, head of the police and fire department (date not shown), by which it was recommended that the city auditor be instructed to pay appellant the sum of $1.716.52, in settlement of claim for damages sustained by her September 6, 1926; that said claim was passed upon and approved as so recommended by the city commissioners at a board meeting December 21, 1928; that suit was filed April 3, 1930. On the filing of appellant's claim, the running of the statute of limitation ceased, and was held in abeyance until payment under the audit thereof was finally refused by the passing of the order by the new administration of date July 12, 1929, for the purpose of revoking the order of date December 21, 1928; therefore appellant's claim, or cause of action, was not barred by the two-year statute of limitation at the time her petition was filed, as same did not accrue until July 12, 1929, date of revocation order.

Appellant further contends that, because said order recites, "that part of the money allowed is to be paid in as taxes to the city of Dallas, which appellant owes to it, is nothing more than a releasing of taxes of an individual in violation of the constitution, and presents a complete defense to appellant's cause of action." The order entered, upon which this position is based, is as follows: "That the City Attorney be instructed to draw the necessary release in this connection. It is understood that out of the above settlement to Mrs. Williams she will pay $641.52 accumulated taxes on her homestead." That the above language is not susceptible of the construction placed thereon by appellee, viz. that thereby appellant was released from the payment of taxes due by her to the City of Dallas, we think is self-evident, for, instead of the payment of said taxes being released, appellant is required by said language to pay to the city of Dallas the sum of $641.52 as taxes, penalties, and interest due the city out of said sum of $1,716.52; therefore this proposition cannot be sustained.

By our research we have reached the conclusion that appellant was and is entitled to the relief sought; therefore the judgment of the trial court is reversed and judgment here rendered awarding writ of mandamus as prayed for; that appellee be and he is required in his official capacity to issue and countersign such check, order, or voucher and deliver same to appellant in accordance with the terms and provisions of the order allowing and directing the payment of appellant's claim.

Reversed and rendered.